[No. 3671. Decided March 7, 1901.]

W. G. TAYLOR, *Respondent,* v. CITY OF BALLARD, *Appellant.*

MUNICIPAL CORPORATIONS — DEFECTIVE STREET — ABSENCE OF RAILING — NEGLIGENCE.

Where a city maintains a street, elevated from three and one-half to six feet above the adjacent land, without a guard rail to protect teams from shying off the roadway in case of fright, it is liable for negligence when a gentle horse, driven with ordinary care by an experienced driver, becomes frightened at the sight and noise of escaping steam blown off at that point of the street through pipes passing thereunder from an electric power house operated by the city, and backs the buggy to which it is harnessed off the roadway, causing serious injuries to the driver.

SAME — INSTRUCTIONS — REASONABLE AND ORDINARY CARE.

An instruction which charges a jury that the law imposes on municipalities the duty of ordinary care in maintaining their

streets in safe condition for ordinary travel is not erroneous on the ground that the law merely requires the exercise of reasonable care in such cases, since there is no distinction between ordinary care and reasonable care.

ACTION FOR PERSONAL INJURIES — PERMANENCY OF INJURY — PLEADING AND PROOF.

The admission of testimony by physicians that plaintiff in an action for personal injuries would probably never recover his health again was not erroneous, under a complaint alleging that he would be incapacitated from doing his work for the period of two years, when the complaint further alleges that plaintiff was permanently injured and would continue to suffer for the remainder of his natural life great bodily pain and mental anguish. ·

SAME — ARGUMENT OF COUNSEL.

In an action to recover damages for personal injuries, a statement by counsel that plaintiff "tells you the truth when he tells you he will not be able to get married, and I submit the proof shows that he is incapacitated from contracting the marriage relation," would not be prejudicial error, on the ground of improper argument of counsel, when the record shows that the statement was warranted by the testimony of plaintiff.

Appeal from Superior Court, King County.—Hon. E. D. Benson, Judge. Affirmed.

*Wilmon Tucker, Ivan L. Hyland* and *John W. Peter,* for appellant:

Upon the point that the court permitted improper argument to the jury, counsel cite *Brown v. Swineford,* 44 Wis. 282 (28 Am. Rep. 582); *St. Louis, I. M. & S. Ry. Co. v. Waren,* 48 S. W. 224; *Galveston, H. & S. A. Ry. Co. v. Cooper,* 8 S. W. 68; *Galveston, H. & S. A. R. R. Co. v. Kutac,* 11 S. W. 127; *Heddles v. Chicago & N. W. Ry. Co.,* 42 N. W. 237; *Dillingham v. Scales,* 14 S. W. 566; *Andrews v. Chicago, M. & St. P. Ry. Co.,* 71 N. W. 372; *Robertson v. Madison,* 29 Atl. 777; *Haynes v. Trenton,* 18 S. W. 1003; *Geist v. Detroit City Ry. Co.,* 51 N. W. 1112; *Tucker v. Henniker,* 41 N. H. 317; *State*

*v. Smith,* 75 N. C. 306; *Gulf, C. & S. F. Ry. Co. v. Butcher,* 18 S. W. 583; *Indianapolis Journal Newspaper Co. v. Pugh,* 33 N. E. 991; *Houston & T. C. Ry. Co. v. O'Hare,* 64 Tex. 600.

The law requires municipalities to exercise only reasonable care in cases of this kind, and does not impose upon them the use of ordinary care in maintaining and keeping their streets and sidewalks in a safe condition. *Fogg v. Nahant,* 106 Mass. 278; *Rowell v. Lowell,* 7 Gray, 100 (66 Am. Dec. 464); *Barber v. Roxbury,* 11 Allen, 318; *Chicago v. McGiven,* 78 Ill. 348; *Jenks v. Wilbraham,* 11 Gray, 142; *Kidder v. Dunstable,* 7 Gray, 104; *Day v. Mt. Pleasant,* 30 N. W. 853; *Chicago v. Bixby,* 84 Ill. 83 (25 Am. Rep. 429); *Van Pelt v. Clarksburg,* 24 S. E. 878; *Yeager v. Bluefield,* 40 W. Va. 484 (21 S. E. 752); *Hubbard v. Concord,* 35 N. H. 52 (69 Am. Dec. 520); Elliott, Roads and Streets, § 448; Angell, Highways (2d ed.), p. 388, note 2.

As to liability for lack of railings or barriers on side of road, counsel cite *Bell v. Wayne,* 48 L. R. A. 644 (82 N. W. 215); *Doak v. Saginaw Township,* 119 Mich. 680 (78 N. W. 883).

*P. V. Davis* and *William A. Gilmore,* for respondent:

It is the duty of municipalities to exercise reasonable care and diligence to see that highways are constructed and maintained in a safe condition for ordinary travel, in the ordinary methods, and to know and foresee that its streets will be constantly traveled by persons driving animals with the characteristics and propensities of the horse; and if, with such knowledge, this accident might have been and ought to have been foreseen, and with reasonable diligence on the part of the officers of the city could have been guarded against and prevented, then the failure of the city to guard against the accident was neg-

ligence, and such negligence was the proximate cause of the injuries to plaintiff. 1 Sutherland, Damages (1883 ed.), pp. 38-47; *Yoders v. Amwell Township,* 33 Atl. 1017 (51 Am. St. Rep. 750); *City Council of Augusta v. Hudson,* 21 S. E. 289; *Rohrbough v. Barbour County Court,* 20 S. E. 565 (45 Am. St. Rep. 921); *Simons v. Casco Township,* 63 N. W. 500; *Gage v. Pontiac, O. & N. R. R. Co.,* 63 N. W. 318; *Village of Carterville v. Cook,* 16 Am. St. Rep. 248 (4 L. R. A. 721); *Palmer v. Inhabitants of Andover,* 2 Cush. 600; *Rohde v. Chicago & N. W. Ry. Co.,* 56 N. W. 872; *Yeaw v. Williams,* 15 R. I. 20; *Ouverson v. Grafton,* 65 N. W. 676; *Sturgis v. Kountz,* 30 Atl. 976 (27 L. R. A. 390); *Board of Commissioners of Parke County v. Sappenfield,* 33 N. E. 1012; *Town of Fowler v. Linquist,* 37 N. E. 133; *Union St. Ry. Co. v. Stone,* 37 Pac. 1012; *Joliet v. Shufelt,* 32 N. E. 969 (18 L. R. A. 750, 36 Am. St. Rep. 453); *Crockett v. Village of Barre,* 66 Vt. 269; *Byerly v. Anamosa,* 44 N. W. 359; *Carleton v. Inhabitants of Caribou,* 34 Atl. 269; *Eads v. Marshall,* 29 S. W. 170.

Upon the question of the latitude allowed in argument to the jury, counsel cite *Columbia, etc., R. R. Co. v. Hawthorne,* 3 Wash. T. 353; *State v. Regan,* 8 Wash. 511; *Chezum v. Parker,* 19 Wash. 645; *State v. Hamilton,* 55 Mo. 520; *Higley v. Gilmer,* 3 Mont. 433; *McLain v. State,* 24 N. W. 720; *Bradshaw v. State,* 22 N. W. 361; *Proctor v. De Camp,* 83 Ind. 559; *Festner v. Omaha, etc., Ry. Co.,* 22 N. W. 557; *People v. Barnhart,* 59 Cal. 402; *Morrison v. State,* 76 Ind. 335; *Anderson v. State,* 4 N. E. 63; *Shular v. State,* 4 N. E. 870 (55 Am. Rep. 211); *Scott v. Chicago, etc., Ry. Co.,* 27 N. W. 276; Thompson, Trials, § § 957, 962-964, 978.

The opinion of the court was delivered by

Dunbar, J.—This is an action for damages for personal injuries alleged to have been suffered by the plaintiff while driving on an elevated road in the city of Ballard. The verdict was for the plaintiff in the sum of $10,000, which was reduced by the trial court, on motion for a new trial, to $9,750. From that judgment this appeal is taken.

The accident occurred opposite the city water works and electric light plant, which were constructed by the city several years before the accident, and ever since have been, and are now, operated by the city of Ballard, at a place where the road was not guarded on either side. At the place where the accident occurred the road was elevated about four feet on the side next the water works and light plant, and from three and one-half to six feet on the other side next the bay,—the side where the plaintiff fell off the road. The road is the principal traveled road between Ballard and Fremont. The plaintiff was driving on this road about eight o'clock in the afternoon of April 24, 1899, with a horse hitched to a buggy. The horse is shown to have been a gentle horse and accustomed to being driven by ladies. It appears that the plaintiff had never been over this part of the road before. The testimony showed that he was a reasonably experienced driver, but the night was dark and he did not know that the road was elevated or unguarded at that place. There had been, before the accident, a stringer four inches by six inches wide nailed to the planking along the outer edge of the road; but this slight protection had been missing for six months prior to the accident, so that the road was absolutely unprotected for a distance of about thirty-five feet. There were two pipes leading from the pump house under the road, and the officers who were running the light

plant were in the habit of blowing off steam through these
pipes from the cylinder cocks of the light plant in the eve-
ning about the time the plaintiff was passing.    This
steam arose from both sides  of  the  road,  sometimes
blowing across the road, and  this  was  the  condition
on the evening of  the  accident.    As  plaintiff  ap-
proached the pump house and electric light plant he
stopped his horse to permit a lady bicyclist to pass, when
he immediately started forward.    It does not appear,
however, that the horse became frightened at the bicycle.
At this time, also, some small animal ran across the road in
front of the horse, and it is contended by the appellant that
the testimony does not show whether it was the steam from
the pipes, or the animal, which scared the horse, but the
testimony of the plaintiff is to the effect that the animal
ran across the road after the horse was frightened by the
steam, and, if his testimony be true, the animal had
nothing to do with scaring the horse.    But the noise at the
pump house and a cloud of vapor which arose from the
left side of the road attracted the attention of the horse,
and it refused to go ahead.    Just at that time another
cloud of  vapor  arose  from the  other  side,  and  the
horse  began  to  back,  and  backed  the  buggy  over
the side of the road and into the drift wood below.    The
respondent testified that when he felt the wheels drop-
ping  over  the  embankment  he  tried  to  save  him-
self by attempting to jump from  the  buggy,  but did
not succeed in getting out.    He was thrown violently
among the drift wood where he was found an hour or so
afterwards, lying in an  unconscious  condition,  about
three feet from the tide, which was coming in.

Many assignments of error are made, which we will
not undertake to follow seriatim.    It seems to us that the
principal question in this case, viz., whether the city was

responsible for the condition of the road which was the cause of the injury, was decided by this court against appellant's contention in *White v. Ballard,* 19 Wash. 284 (53 Pac. 159), where the plaintiff recovered for an accident which befell her while driving in a buggy when the horse took fright from several bicycles on an' eight-foot planking, causing it to back off of the planking to the depression below, there being no guard rail where the accident occurred. This court in that case said:

"The question of negligent construction and condition of the street, upon these facts, was certainly one for the jury, and there is substantial evidence to sustain their deduction of such negligence. The bicyclists who occasioned the fright of the horse were not guilty of any negligence or wrong. It was, then, a question for the jury to determine whether the negligent condition of the street was the proximate cause of the injury. We are satisfied with the instructions of the superior court given to the jury upon the question of negligence. It would be of but little value to review the almost infinite number of cases upon this question. Streets must be so constructed that the ordinary horse, with the ordinary disposition, allowing for the ordinary incidents of caprice or fright, can be driven with reasonable safety on them."

This language, if applied to the case under discussion, would work an affirmance of the judgment. The street or road in this instance, under the testimony of the plaintiff, at least, was not so constructed that the ordinary horse with the ordinary disposition,—and it was shown that the horse which the plaintiff was driving was a gentle horse,—could be driven with reasonable safety. The condition of things shown by the testimony in this case would frighten almost any horse. The noise of the power house, conjoined with the sputtering and hissing of the steam as it escaped from the pipes, would have a tendency to excite even a very gentle horse.

The appellant relies upon *Teater v. Seattle*, 10 Wash. 327 (38 Pac. 1006), but that case is not controlling under the circumstances of this case. There, it is true, the team was killed and the buggy injured in an attempt to make a turn on a bridge forming part of a public drive way, by running off the edge of the bridge, which was constructed without a railing; but the theory upon which that case was decided was that the team had become unmanageable and had run a long distance,—a mile or such a matter,—before the accident occurred, and that the fact of the team becoming unmanageable was not attributable in any manner to any defect in the street, but was from an independent cause, viz., the unmanageable disposition of the horses,—an entirely different proposition from the one involved in this case.

It is insisted that the court erred in allowing Dr. Sloan, the attending physician, to testify as to what his opinion was as to the probability of the plaintiff ever recovering his health again, for the reason that under the allegations of the complaint it was irrelevant, immaterial, and incompetent, because the complaint alleged that the plaintiff would be incapacitated from doing his work for the period of two years, and that it was, therefore, improper to allow the witness to testify that he was permanently injured. But in addition to the allegations quoted by the appellant, the complaint, in paragraph 8, alleges that plaintiff was permanently injured and that, on account of such injuries, he would continue to suffer for the remainder of his natural life great bodily pain and mental anguish. There seems to us to be nothing inconsistent in these allegations, for the plaintiff might be incapacitated from doing any work for two years, and yet, by reason of a permanent injury, be rendered more or less inefficient for the remainder of his life. But, in any event,

the evidence was sufficient to justify a conclusion by the jury that the plaintiff was permanently injured, and under the provisions of Ballinger's Code, § 6535, all amendments will be considered made that ought to have been made, and the pleading will be treated as amended in accordance with the testimony. *Allend v. Spokane Falls & N. Ry. Co.,* 21 Wash. 324 (58 Pac. 244).

We think there was no error in admitting the testimony of Dr. Adams as to his opinion of the probable recovery of the plaintiff from the accident.

The fourth allegation of error is the refusal of the court to grant defendant's motion for a nonsuit. The motion was properly denied. There was sufficient testimony as to the causes which frightened the horse to go to the jury. It is insisted by the appellant that the fact that the road had been used daily by hundreds of people for a period of three years without any accident was the strongest evidence that could be introduced that the road was in a reasonably safe condition. In addition to the fact that this was an argument which would have been more properly addressed to the jury, the plaintiff offered to prove that other accidents had occurred at this place, but was not permitted to do so. The allegations as to the proximate cause were sufficient. *Allend v. Spokane Falls & N. Ry. Co., supra.*

Counsel for appellant strenuously insists that the court erred in allowing counsel for the respondent to indulge in improper statements to the jury, which are criticised as inflammatory, intended to arouse the prejudices of the jury by illegitimate considerations. The only statement which was properly objected to is the statement of the counsel which culminated in the following remark: "And Mr. Taylor tells you the truth when he tells you he will not be able to get married, and I submit the proof shows that

he is incapacitated from contracting the marriage rela-
tion." And on objection it was stated by the court that
it was proper matter for argument to the jury. Many
cases are cited by appellant to sustain his contention. In
the very nature of things, the remarks passed upon by
the appellate courts have all been different, and it is im-
possible to lay down a rule that will govern particular
cases. For this reason large discretionary powers are
conceded to trial courts, who are surrounded with the at-
mosphere of the trial and are better able than the ap-
pellate court to tell what remarks would have prejudicial
effects on the minds of the jury. None of the cases cited
by the appellant seem to us to control the case at bar.
In *Ferguson v. State*, 49 Ind. 33, which was the trial of
a man for murder, during the progress of the argument
for the state, counsel commented on the frequent occur-
rence of murder in the community, and the formation of
vigilance committees and mobs, and said that the same
was caused by the laxity of the administration of the laws,
stating to the jury that they should make an example of
the defendant. This was held to be reversible error, and,
we think, very properly so; for, as was said by the court:

"It was tantamount to saying to the jury, murders have
been committed, vigilance committees formed, and mobs
assembled in this county, and you may take these mat-
ters into consideration in making your verdict; and as
you have got a chance now, you may make an example of
defendant."

This was an appeal to popular prejudice, and a direct
attempt to degrade the high office of a juror into that
of a mob, and to inflame the minds of the jury against one
particular individual because crimes with which he had
no connection had been frequently perpetrated in the
community.

But this case was afterwards distinguished by the supreme court of Indiana in *Combs v. State,* 75 Ind. 215, which was also a trial on an indictment for murder. In that case the plea of insanity had been interposed, and the attorney stated that three or four men had been recently executed at Indianapolis, most of whom set up the plea of insanity; and it was held that was not of sufficient materiality to warrant a verdict, that the conduct of the argument was a matter largely within the discretion of the trial court, and that it was only where there was an abuse of such discretion that appellate courts would interfere; and it was there said:

"Courts ought not to reverse causes because counsel, in the heat of argument, sometimes make extravagant statements, or wander a little way outside of the record. If a matter of great materiality is brought into the record as a matter of extended comment, then there would be reason for setting aside the verdict. If every immaterial assertion or statement which creeps into an argument were to be held ground for reversal, courts would be so much occupied in criticising the addresses of advocates as to have little time for anything else. Common fairness requires that courts should ascribe to jurors ordinary intelligence, and not disregard their verdicts because counsel, during the argument, may have made some general statements not supported by evidence."

This court, in *Sears v. Seattle, etc., Street Ry. Co.,* 6 Wash. 227 (33 Pac. 389, 1081), where the counsel had made a statement which was admittedly in conflict with the facts, or, rather, where there had been no testimony to warrant the statement, although he claimed that the statement was a logical inference from the facts proven, said:

"But counsel must be allowed some latitude in the discussion of their cases before the jury, and if they are not permitted to draw inferences or conclusions from the particular facts in evidence it would be impossible for

them to make an argument at all. The mere recital of
facts already before the jury is not an argument. There
must be some reason offered for the purpose of convincing
the mind, some inference drawn from facts established
or claimed to exist, in order to constitute an argument.
But counsel cannot be compelled by the court to reason
logically or to draw correct inferences from given facts;
and if they err in these respects it is no ground for a
new trial;" citing many cases.

But, in addition to the authorities, which almost uni-
versally hold misstatements by counsel will not work a
reversal of a judgment unless it clearly appears that the
statement was prejudicial, we are satisfied from an in-
vestigation of the record that the statement of the coun-
sel was warranted by the testimony of the plaintiff. ·

An objection is made to the first instruction given by
the court, and, without setting forth the instruction *in
extenso,* the court, after telling the jury that if they found
that the plaintiff had acted as a person of ordinary pru-
dence generally would act under the circumstances, and
·that no act of his contributed to the injury complained of,
said:

"And if you further believe from a preponderance of
the evidence that in making and maintaining this road at
the place in question, including the steam pipes thereunder,
if such there were, defendant, the city of Ballard, failed
to exercise such care to know the condition of this road to
make and keep said road at said place reasonably and ordi-
narily safe for ordinary modes of travel, as cities like Bal-
lard, through officers of ordinary care and prudence gen-
erally exercise under circumstances entirely similar to all
those which surrounded the establishment and maintenance
of this Fremont-Ballard road at the place in question;
and if you further believe from the preponderance of the
evidence that such failure on the part of the city of Bal-
lard, if such failure there was, was the proximate cause,
that is, the direct and natural cause of plaintiff's injury,

if plaintiff was injured, then you will bring in a verdict for plaintiff," etc.

The objection to this instruction is that it endeavors to define the degree of care to be exercised by cities like Ballard in effect as being ordinary care, while the law requires municipalities to exercise only reasonable care and does not impose upon them the duty of ordinary care in maintaining and keeping their streets and sidewalks in safe condition. We are of the opinion that the distinction undertaken to be drawn between ordinary care and reasonable care is not recognized by the authorities, but that they are, in substance, convertible terms; and the cases cited by appellant upon this proposition do not sustain it, for in the first case cited, *Boulder v. Niles,* 9 Colo. 415 (12 Pac. 632), while it was held that it must be shown that the city had not used reasonable diligence in removing certain obstructions from the street, it nowhere appears in the opinion of the court that the term "reasonable diligence" is used as contradistinguished from "ordinary care." But, as showing that it was used in the same sense, the court concludes its observation on this proposition:

"If, in point of fact, the proper officers of the defendant city did not know of such obstruction when, by ordinary and due diligence and care, they ought to have known of it and removed it, the defendant must be held responsible as in case of actual notice."

Dillon on Municipal Corporations (4th ed.), §§ 1006-1019, is also cited by the appellant on this proposition, but we think this authority also shows, if it shows anything at all, that there is no distinction made between these terms. All the cases, of course, hold that the corporation is not required to so construct streets or walks as to secure absolute immunity from danger to people who travel upon them; and this is the question which is generally discussed

in the cases cited. The language used by Mr. Dillon in § 1006, above cited, is as follows:

"Its duty, generally stated, is only to use due and proper care to see that its sidewalks are reasonably safe for persons exercising ordinary care and prudence."

It is true that in *Prindle v. Town of Fletcher*, 39 Vt. 255, the court said:

"We have never understood that, under our statute, the duty of the town, in the matter of keeping its highways in good and sufficient repair, as affecting its liability to pay damages for an injury caused by a defect in such highways, is to be measured by the exercise of ordinary care and diligence;"

basing this announcement largely upon the statute; for, continuing, the court said:

"We think no such test and measure are warranted by the statute, or countenanced by judicial decision. . . . The requirement is, that the town shall keep its highways in good and sufficient repair. This prescribes its duty. If the town is chargeable with any fault in respect to this duty, then the liability attaches."

But even under the statute the language was used unadvisedly by the court, for, proceeding, it says:

"It was not the design of the statute to require impossibilities of the town, and to make it the absolute insurer against all accidents and injuries caused by defects in highways. But it was designed to hold the town to insure against accidents and injuries caused by defects existing through any fault of the town."

It is not difficult to determine that the exercise of ordinary care on the part of the city would relieve it from the duties of an absolute insurer against all accidents and injuries caused by defects in highways, and that decision is based upon the particular circumstances of that case, viz., that the ground gave way under the horse through some

latent defect under the ground, which was not known and was not discoverable. The court, in its opinion, says that the plaintiff admitted that the authorities of the town could not have learned about it, and that to hold the town liable in such case would establish a principle that would render the town liable as absolute insurer against the consequences of all defects. So that the case, while using the language we have quoted, is not really an authority for appellant's contention.

But in consonance with the view which we have always entertained, that "reasonable care" and "ordinary care" are synonymous terms, we cite *Read v. Morse,* 34 Wis. 315, where the court, in discussing this proposition, says:

"Yet the *degree* of care required is the same. In either case reasonable care, or what is the same thing, ordinary care, only, is required. The term 'reasonable care' has no fixed, definite signification, but is a relative term. The caution which persons of ordinary prudence would exercise in any given case is 'reasonable care,' as the term is used in the law."

In 16 Am. & Eng. Enc. Law, p. 398, it is said:

"It is difficult to define the term 'ordinary care;' it is a relative term, always dependent on relationship and circumstances."

And in a note on the same page it is said:

"Ordinary care depends on circumstances and is such care as a person of ordinary prudence would have exercised;"

citing authorities. So that it would be ordinary care if it was the care which was exercised by reasonable people under ordinary circumstances. We think the distinction, if any at all exists, is too vague to warrant a reversal of the cause on that ground.

Other errors are alleged, but they all hinge more or less

upon the propositions already discussed. An examination of the testimony in the case and of the instructions given and refused convinces us that no error was committed in the trial of the cause.

The judgment will therefore be affirmed.

REAVIS, C. J., and FULLERTON and ANDERS, JJ., concur.