GEORGE M. KELSEY *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY.

ALICE KELSEY *vs.* SAME.

FRANK L. MORSE, administrator, *vs.* SAME.

SAME *vs.* SAME.

Hampden.   November 12, 1901. — March 3, 1902.

Present: HOLMES, C. J., KNOWLTON, LATHROP, HAMMOND, & LORING, JJ.

*Negligence.   Railroad.*

It is not negligence for an engineer to sound the whistle of a locomotive engine as he is passing under a bridge which is part of a highway, unless something more is shown.

It is not negligence for a railroad company to build and maintain an open bridge with a plank floor carrying a highway over its tracks with slight cracks between the planks, so that steam comes up through the cracks when an engine is passing beneath, if the bridge is built in accordance with orders of the county commissioners.

If a railroad company when building an open bridge to carry a highway over its tracks, is required by an order of the county commissioners to put in certain timbers to protect the edges of the planking from any injury from wheels, a failure to do this does not make the railroad company liable for an accident caused by a horse taking fright from steam coming up through cracks between the planks of the bridge, which could not in any way have been prevented by having the required timbers.

LATHROP, J.   These are four actions of tort.   The first two are for injuries sustained by the plaintiffs while living, and which since their death are prosecuted by their administrator. The last two are brought by their administrator to recover for their deaths.   The four cases were tried together, and at the close of the evidence the presiding judge directed the jury to return a verdict for the defendant in each case ; and the cases are before us on the plaintiffs' exceptions.

The record is a long one, as it contains all the evidence introduced at the trial, but we think that the facts, so far as the questions of law are involved, may be briefly stated.   The plaintiffs in the first two cases were husband and wife.   Late in the afternoon of June 2, 1900, they started to drive from Westfield to Holyoke in an open wagon drawn by one horse.   With them were two of their children, a boy of fourteen and a girl of thirteen.   Some miles out from Westfield, while crossing a bridge over the railroad of the defendant, the horse was frightened and ran.   The wagon was overturned, the persons inside were thrown out, and the plaintiffs in the first two cases sustained injuries from which they died in the following month.

The first count in each of the two cases is for negligence in sounding the whistle of a locomotive engine under the bridge upon which the plaintiffs were passing.   We assume for the purposes of the case that there was evidence that Mr. Kelsey was in the exercise of due care, and that the horse was frightened by the sounding of the whistle.   The question remains whether there was evidence that the defendant was guilty of negligence in blowing the whistle.   The bridge was not in a thickly settled neighborhood, but in a wild, rocky country. There was a stone quarry near by, and there were a few houses along the highway, at some distance apart, none near the bridge. The highway as it approaches the bridge from Westfield runs nearly parallel with the railroad, then it makes a sharp turn to the right a short distance from the bridge, and after crossing the bridge runs in a straight line about thirty feet and then turns sharply to the left.   The place where the wagon was overturned was about seventy-five feet from the bridge.   The bridge itself was twenty feet wide and twenty-two feet six inches long be-

tween the abutments, and the distance from the top of the rails to the bottom of the planking of the bridge was eighteen feet, nine and one-half inches. The railroad could not be seen from the highway until the bridge was reached, nor could any part of the highway be seen from the railroad except the bridge. When the train was first seen by the occupants of the wagon, the tender of the locomotive engine was just going under the bridge. There is no evidence in the case that the engineer of the locomotive engine saw the horse and wagon before the whistle was sounded, or had any cause to suppose that when it was sounded there was a horse upon the bridge. The train of fifteen freight cars was going towards Westfield, at the rate of twenty-eight or thirty miles an hour, down grade, steam being shut off, and the horse went over the bridge at a good rate of speed; and it is obvious that the opportunity for seeing a horse and wagon on the bridge was very brief. It cannot be said, then, that there was anything wanton or reckless in sounding the whistle.

The rules of law which govern this case are well settled. In *Favor* v. *Boston & Lowell Railroad*, 114 Mass. 350, it was held that where the horse of a traveller upon the highway was frightened by the noise of a train passing upon an overhead bridge, the traveller could not recover for injuries resulting from the fright of the horse. The same rule was applied in *Lamb* v. *Old Colony Railroad*, 140 Mass. 79, where a horse, on a highway running parallel to the railroad, was frightened by the smoke coming from the locomotive, caused by adding coal to the fire, if such act at that place was necessary in the ordinary running of the train; and that it was not the duty of those on the engine to be on the lookout for travellers on the highway who might be endangered by such act.

So, it was held in *Howard* v. *Union Freight Railroad*, 156 Mass. 159, that steam escaping from the safety valve of a dummy engine, lawfully upon the streets of a city, and frightening a horse, did not show negligence on the part of the railroad company.

If, however, the sound of a whistle is unduly prolonged when the train is not in motion, and the engineer sees horses seventy feet off, this may be found to be negligent. *Flynn* v. *Boston &*

*Albany Railroad,* 169 Mass. 305.   It was however said in this
case : " The engineer and conductor were not bound before
giving the signal to look and see if there were any persons on
the highway."

The burden of proof was upon the plaintiffs to show that not
only was a whistle sounded, but that the sounding was negli-
gent.   While there was evidence that there was no whistling
post near the bridge nor a station near by, the plaintiffs should
have gone further and shown that there was no occasion for a
whistle to be sounded.   Where a railroad and a highway cross
each other at different grades, there is no presumption of negli-
gence in sounding a whistle on an overhead bridge, or in sound-
ing it under a bridge, over which passes a highway.   *Cincin-
nati, Indianapolis, St. Louis &. Chicago Railway* v. *Gaines,* 104
Ind. 526.   *Farley* v. *Harris,* 186 Penn. St. 440.

We are of opinion that, under all the circumstances of this
case, there was no sufficient evidence of negligence on the part
of the defendant in blowing the whistle.

The second count in each declaration in the first two cases
alleges that the bridge was defective, and that the horse was
frightened by steam and smoke from the whistle and the smoke
stack, coming up through cracks in the flooring of the bridge.
One witness testified that some of the planks, he should judge,
were three eighths of an inch apart, or more.   Another witness
was asked how much the planks were open, and answered :
" Well, I could n't say.   Somewhere in the neighborhood of half
an inch, I should judge."   There was evidence that steam came
up through the cracks and over the sides of the bridge.   There
was very slight evidence that the steam coming through the
cracks had anything to do with frightening the horse.   But it
is not necessary to consider this, as we are of opinion that the
evidence does not show any defect in the bridge.   The cracks
were slight, and such as might be expected to exist in an open
bridge with a plank floor.   Moisture would swell the planks,
and make them approach each other, and dry weather would
shrink them and cause them to recede.   There was no testi-
mony in the case to show that the bridge was not built in exact
accord with the orders of the county commissioners ; but the
plaintiff's counsel has called our attention to the fact that the

order of the county commissioners contains the following requirement : " Whenever a bridge is covered with plank, the top of the planking must be at grade and a stick of chestnut timber, ten inches on the bottom and inside, and sloping to eight inches on the outside thereof, must be firmly imbedded upon each side of the bridge for securing the edges of the plank from any injury from wheels in their passage to and from said bridge." The counsel contend that certain photographs put in evidence at the trial, and which are before us, show that these timbers were not put in. This is apparently so, but the object of the requirement was to protect the edges of the planks, and if the defendant did not strictly comply with the order of the county commissioners in respect to the timbers, there is nothing to show that such non-compliance was in any way the cause of the accident.

As we have found that there was no sufficient evidence of negligence on the part of the defendant, in the first two cases, it follows that the plaintiffs in the last two cases, whether they are brought under the St. of 1898, c. 565, or the Pub. Sts. c. 52, § 17, as contended by the plaintiffs, or under the latter statute alone, as contended by the defendant, cannot maintain their actions for the death of their intestates.

The order in each case must be

*Exceptions overruled.*

*A. L. Green & F. F. Bennett,* for the plaintiffs.
*W. S. Robinson,* for the defendant.