[No. 9783.    Department One.    June 12, 1912.]

## S. J. JONES, *by his Guardian etc.*, *Plaintiff and Appellant*, v. SPOKANE, PORTLAND & SEATTLE RAILWAY COMPANY *et al.*, *Defendants and Appellants.*[1]

RAILROADS—INJURY TO TRAVELERS—OVERHEAD BRIDGE—NEGLIGENCE—CONSTRUCTION—EVIDENCE—SUFFICIENCY. In an action against a railroad company for injuries sustained by reason of an alleged defective overhead highway bridge, the fact that the defendant constructed the bridge is *prima facie* established by its admission of ownership of the track and roadbed and the fact that it accepted a city franchise requiring it to construct and forever maintain a suitable highway bridge over its tracks at that point.

SAME. A jury is warranted in finding negligent construction of a highway bridge over railroad tracks as a contributing cause of the running away of a team, which became frightened by smoke and steam coming up through the floor of the bridge, where it appears that the bridge had a single floor with cracks one-half to one and one-half inches in width, and a carpenter testified that the usual method of constructing such a bridge is to lay a double floor, the first floor laid diagonally and the second at right angles.

SAME—NEGLIGENT CONSTRUCTION—EXCESSIVE SPEED—PROXIMATE CAUSES OF ACCIDENT—EVIDENCE—SUFFICIENCY. Where a team took fright and ran away on a highway bridge over railroad tracks, when a train passed under at an excessive speed, and smoke and steam came up through wide cracks in the floor of the bridge, the jury is warranted in finding that the excessive speed and the smoke under the team were the proximate causes of the fright, and a verdict thereon is not open to the objection that it was based on speculation or conjecture.

SAME—CONTRIBUTING CAUSES—EXCESSIVE SPEED—EVIDENCE—SUFFICIENCY. Where it was not usual or customary to operate a train at excessive speed, under a highway bridge in a thickly inhabited part of the city, and there was evidence that smoke and steam came up through the cracks in the floor and frightened a team, there is sufficient evidence that negligent operation of the train contributed to the fright, where it appears that the driver could not see the track when he drove on the bridge nor until about fifty feet from a point directly over the track, the approach being on a down grade of eight per cent, that he did not see or hear the train until at

[1]Reported in 124 Pac. 142.

the bridge, no bell was rung or whistle sounded, and the train was traveling at forty-five miles per hour.

NEGLIGENCE—LIABILITIES—CONCURRENT ACTS. Where the concurrent negligence of two persons combined results in an injury to a third person, he may recover from either or both of them.

RAILROADS—INJURY TO TRAVELERS—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY. In such a case, the driver's contributory negligence is for the jury, where he could not see the train until within fifty feet of the tracks, when he could see the track for half a mile, but the train was upon him, and he testified that before driving on the bridge he listened for it but could not hear it.

APPEAL—DECISIONS REVIEWABLE—FINALITY—ORDER GRANTING NEW TRIAL—EXCESSIVE VERDICT. Where a new trial was granted upon the sole ground that the verdict was excessive, the plaintiff refusing to accept a reduction and make a remission, plaintiff's appeal cannot be dismissed on the ground that an order granting a new trial is not appealable.

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT. It is not a clear abuse of discretion to set aside a verdict for personal injuries for $5,215.50, as excessive and grant a new trial, unless the plaintiff consents to a remission of $2,000, where it appears that the plaintiff, a boy, seventeen years of age, was injured in a runaway, the end of his collar bone was detached from the breast bone, and eight months later had not united, and the boy was 31 days in the hospital and testified that he was not able to work; the burden being upon the trial court to exercise its discretion.

APPEAL—REVIEW—DISCRETION. The setting aside of a verdict as excessive will not be reviewed on appeal except for clear abuse of discretion.

Cross-appeals from a judgment of the superior court for Spokane county, Rice, J., entered July 25, 1911, upon the verdict of a jury rendered in favor of the plaintiff, for personal injuries sustained by the driver of a team at a railroad crossing, and from an order granting a new trial unless the plaintiff accepts a reduction in the amount.   Modified.

*H. M. Stephens,* for plaintiff.

*Cannon, Ferris, Swan & Lally,* for defendant Spokane, Portland & Seattle Railway Company.

*L. F. Chester, Charles S. Albert,* and *William A. Monten,* for defendant Great Northern Railway Company.

Gose, J.—This action was commenced to recover damages for personal injuries, suffered by the plaintiff in consequence of the alleged negligence of the defendants. There was a verdict in his favor, which the court reduced in entering the judgment. Each of the parties has appealed.

The negligence charged is that the defendants own a right of way, roadbed, and railway, within the city of Spokane; that the roadbed where the accident happened is in a deep cut which is spanned by an overhead bridge; that the franchise granted by the city permitting the construction of the railway required the erection of an overhead crossing at the place of the accident; that the crossing was negligently constructed in that it was made of wood with a wooden floor, with spaces between the floor planks; that, by reason of the negligent construction, smoke and steam from a passing train, operated by the defendants jointly, passed through the open spaces of the bridge upon which the plaintiff was driving a team attached to a heavy wagon; that the train was running at a speed of fifty miles an hour; that no bell was rung, no whistle sounded, and no other warning given; that, by reason of the cut and the contour of the ground at the approach to the bridge, the plaintiff could not see or hear the train until he was upon the bridge; that the smoke and steam from the engine passed through the cracks immediately under the horses, and frightened them so that they ran away and threw the plaintiff from the wagon; that the wagon passed over the plaintiff, and that he sustained severe and permanent injuries.

The defendants answered separately, denying the charges of negligence. The defendant Great Northern Railway Company admits that it owns the right of way and roadbed where the plaintiff was injured. Each of the defendants pleaded affirmatively that the plaintiff's injuries resulted in consequence of his own negligence.

The city of Spokane, prior to the accident, granted a franchise to the Great Northern Railway Company, which

provides that it shall, "at its sole cost and expense, build and forever maintain a suitable highway bridge over its tracks."

In addition to the general verdict, the jury, in response to special interrogatories, answered that no bell was rung and no whistle sounded, that the team was not frightened by the noise of the train, and that the plaintiff could have seen the approaching train when he was approximately fifty feet from a point on the bridge directly over the railway track. Each of the defendants interposed timely motions for a nonsuit and a directed verdict. After the return of the verdict, the defendant the Great Northern Railway Company filed its motion for a new trial, and the defendant the Spokane, Portland & Seattle Railway Company filed an alternative motion for a judgment *non obstante,* and in event the motion was denied, for a new trial. The denial of these motions constitutes the first and principal error assigned. It is not disputed that the defendant the Spokane, Portland & Seattle Railway Company operated the train that passed under the bridge at the time the boy received his injury.

The defendant the Great Northern Railway Company contends that there is no evidence that it constructed the bridge. It suffices to say that it admits its ownership of the track and roadbed, and that it accepted the franchise which required it to construct and forever maintain a suitable highway bridge over its track. This made a *prima facie* case, and it offered no evidence tending to show that it did not construct the bridge. Moreover, if it had done so, the franchise puts the duty upon it of forever maintaining a suitable bridge.

It contends, further, that the cracks in the bridge were the natural result of the shrinkage of the planks in the floor, that the bridge was constructed in the usual way, and that the presence of the cracks under these circumstances does not raise a presumption of negligence. In support of this

view it cites *Kelsey v. New York, N. H. & H. R. Co.*, 181 Mass. 64, 63 N. E. 8. The vice of the contention is that it misinterprets the evidence. One of defendants' witnesses, Mr. Usted, a carpenter, testified that the usual and ordinary method of constructing such a bridge is to lay a double floor, laying the first floor diagonally with the bridge and laying the second floor at right angles with it, thus breaking the joints. The bridge had a single floor with cracks from one-half to one and one-half inches in width. In the *Kelsey* case it was alleged that the parties met their death in consequence of two acts of negligence upon the part of the defendant; (1) negligence in sounding the whistle of the engine under the bridge upon which the parties were driving, and (2) that the bridge was defective and that the horse was frightened by steam from the whistle and smokestack coming up through the cracks in the floor of the bridge. After observing that steam came through the cracks of the bridge and that the cracks were slight and such as might be expected to exist in an open bridge with a plank floor, and that the planks would alternately swell and shrink with the varying conditions of the weather, the court said, in denying relief, that, "There was no testimony in the case to show that the bridge was not built in exact accord with the orders of the county commissioners." As we have observed, in this case there is testimony to show that the bridge was not suitably built and maintained. If the negligent construction and maintenance of the bridge was a contributing cause of the injury, the Great Northern Railway Company is liable. *Taylor v. Ballard*, 24 Wash. 191, 64 Pac. 143; *White v. Ballard*, 19 Wash. 284, 53 Pac. 159; *Helbig v. Grays Harbor Elec. Co.*, 37 Wash. 130, 79 Pac. 612; *Selby v. Vancouver Water Works Co.*, 32 Wash. 522, 73 Pac. 504; *Saylor v. Montesano*, 11 Wash. 328, 39 Pac. 653; *Einseidler v. Whitman County*, 22 Wash. 388, 60 Pac. 1122.

This defendant further contends that the verdict rests upon speculation, and that the horses may have been fright-

ened in any one of three ways: (1) by the noise of the approaching train; (2) by the smoke and steam which came up the sides of the bridge; and (3) by the smoke or steam which came up through the cracks of the bridge. The jury eliminated the first reason suggested, and there was practically no testimony to support it. In considering the next two propositions, it suffices to say that the jury was warranted in finding what every horseman knows, viz., that a vehicle traveling at an excessive rate of speed may cause a gentle and tractable horse to take fright, and that the sudden appearance of even ordinary objects under a horse will frighten him when the same object at his side would not do so. The jury was warranted in finding from the evidence that the excessive speed of the train and the smoke under the team were the proximate causes of its fright.

A further consideration of the case as to the alleged negligence of the defendant the Spokane, Portland & Seattle Railway Company requires a brief reference to the testimony. The record discloses that the team was gentle and that the boy was a competent driver; that, owing to the elevation of the ground immediately westerly of the railroad track, the boy could not see the track as he drove upon the bridge, nor until he was approximately fifty feet from a point on the bridge directly over the track, as the jury found; that the bridge, except for about fifty feet immediately above the track, was on a grade; that the boy was driving down an eight per cent grade; that he did not see or hear the train until it was practically at the bridge; that no bell was rung and no whistle sounded; that the train was a passenger train, traveling down grade at forty-five miles per hour; that the top of the smokestack was within five or ten feet of the floor of the bridge; that there were cracks in the bridge from one-half to one and one-half inches in width; that steam and smoke were escaping from the smokestack of the engine; that, as the boy expressed it, there was "smoke on either side of me and between my horses," and that the accident hap-

pened within the city limits of the city of Spokane, where many people lived, and at a street crossing. The defendants' witnesses testified that the bell was ringing, and that the speed of the train was about twenty-five miles per hour.

A railroad company is not liable for damages resulting from the operation of its train in the usual and ordinary way, but it is liable for injuries flowing from the unusual and negligent operation thereof. 33 Cyc. 937 to 939, and 949 to 951.

"The degree of care required is only what under the circumstances of the particular case is ordinary care; or in other words, such care as an ordinarily prudent person would exercise under like circumstances." 33 Cyc. 950, 951.

The correct rule is tersely stated by Judge Rudkin in *Collier v. Great Northern R. Co.,* 40 Wash. 639, 82 Pac. 935, as follows:

"In cases such as this the liability of a railway company depends upon its control over the agency causing the injury, or the duty it owes to the injured party."

The court, in substance, instructed the jury that, if either of the defendants negligently constructed the bridge and negligently left spaces between the boards in the floor, and by reason thereof smoke or steam came through the floor, frightened the team, and caused the boy to be injured, it was responsible for the consequences thereof. It further instructed:

"You are instructed that, if the defendants or either of them were operating a train upon and over the railroad and roadbed of the defendants or either of them, at Fifth avenue and F streets at or about the hour of seven o'clock a. m., on August 23rd, 1910, that said train was being operated at an excessive and negligent rate of speed, and they or either of them failed to give any warning or signal of the approach of said train, and no bell was rung or whistle sounded, and no warning whatever given of the approach of said train, and the minor plaintiff could not hear the said train and could not see the same by reason of the contour

of the ground or the place where the said railroad and train were, although he looked and listened for a train before driving upon said bridge immediately over said railroad and before going upon said overhead crossing at the place where the train passes under said bridge, and that steam or smoke was escaping from said engine, and went up and through the cracks of said bridge, and immediately under the horses which the minor plaintiff was driving, and frightened them, and they ran away and threw the minor plaintiff from the wagon in which he was when driving or controlling said team, and that the defendants knew, or by the exercise of ordinary care should have known, that the said bridge was negligently constructed or that the escape of steam or smoke in the operation of a train down grade and at a high rate of speed, without giving any warning of its approach, was dangerous to a person or persons upon said bridge driving a team thereon or thereover, and that the team of plaintiff was a gentle and well-behaved team, then and in that event your finding must be for the minor plaintiff and against the defendant or defendants guilty of such negligence as defined in these instructions."

The giving of these instructions is assigned as error by each of the defendants. The first instruction was clearly right as to the Great Northern Railway Company. Its duty under its franchise to maintain a suitable bridge was a public duty and a continuing one. Elliott, Railroads (2d ed.), § 467. While the instruction may not be happily worded, it in effect stated to the jury that a failure to build and maintain the bridge in the usual and ordinary way was negligence. The quoted instruction was a correct application of the law. The defendants do not contend that it was usual and customary to operate its train at that point—a street crossing and a thickly inhabited part of the city, as shown by the photographs in evidence—at a speed of forty-five miles an hour, without ringing a bell or giving any warning of its approach; but on the contrary, as we have seen, its testimony is that the bell was ringing, and that the speed did not exceed twenty-five miles an hour. The authorities which they cite go no further than to hold that a railway

company is not liable for the consequences of the noise or smoke made by its locomotives on or in the vicinity of public streets, which are usual and incidental to the prudent running of its trains at such places.

We think there is abundant evidence tending to show that the injury resulted from the combined negligence of the defendants.

"If the concurrent negligence of two or more persons combined together results in an injury to a third person he may recover from either or all." 29 Cyc. 487.

It is next argued that the plaintiff was chargeable as a matter of law with contributory negligence. It suffices to repeat that he could not see the train until he was on the bridge and within fifty feet of a point directly over the railroad track. He could then see the track for a half a mile. When he did see the train it was upon him. He testified that, before driving upon the bridge, he listened for the train and did not hear it. Whether he was guilty of negligence was a question for the jury. *Chicago, St. L. & P. R. Co. v. Butler*, 10 Ind. App. 244, 38 N. E. 1; *Ladouceur v. Northern Pac. R. Co.*, 6 Wash. 280, 33 Pac. 556, 1080; *Grant v. Oregon R. & Nav. Co.*, 54 Wash. 678, 103 Pac. 1126, 25 L. R. A. (N. S.) 925; *Averbuch v. Great Northern R. Co.*, 55 Wash. 633, 104 Pac. 1103.

The defendants have interposed separate motions to dismiss the plaintiff's appeal on the ground that the order granting a new trial is not an appealable order. The jury returned a verdict for $5,213.50. The motions for a new trial were denied on condition that the plaintiff should, within fifteen days, consent to a reduction of the verdict and judgment to $3,500. He declined to consent to the reduction, and a new trial was granted upon that ground only. The motions are denied. *Gray v. Washington Water Power Co.*, 27 Wash. 713, 68 Pac. 360; *Armstrong v. Musser Lumber & Mfg. Co.*, 43 Wash. 584, 86 Pac. 944; *Gardner v. Lovegren*, 27 Wash. 356, 67 Pac. 615.

The evidence shows that the plaintiff sustained a serious injury. We do not think, however, that the trial court abused its discretion in requiring him to consent to the abatement, or in the alternative to accept a new trial. *Sylvester v. Olson*, 63 Wash. 285, 115 Pac. 175; *Snider v. Washington Water Power Co.*, 66 Wash. 598, 120 Pac. 88. Excessive or inadequate damages is made a ground for granting a new trial by the statute. Rem. & Bal. Code, § 399, subd. 5. As a result of the injury, the end of the right collar bone was detached from the breast bone, and had not united at the time of the trial, eight months later. The attending physician testified that he advised wiring it, but that it was not wired. He was then asked: "Well, is it sure that wiring would be a successful treatment or not?" and answered: "No, it is not sure." There is no other testimony on the question. The plaintiff was seventeen years of age and in good health when he received the injury. He was thirty-one days in the hospital and, at the time of the trial, testified that he was not able to perform hard labor. The trial court saw the boy and was of the opinion that the damages awarded by the jury were excessive. The statute puts the burden upon it in such case of passing upon this question, and this court will not disturb its judgment except where there has been a clear abuse of discretion. We cannot say that it has been so in this case.

The judgment will be modified so as to permit the plaintiff to accept a judgment for $3,500 within fifteen days after the filing of the remittitur in the lower court. Otherwise the order granting a new trial will be affirmed. Neither party will recover costs upon appeal.

DUNBAR, C. J., FULLERTON, PARKER, and MOUNT, JJ., concur.