[No. 21064.   Department One.   December 6, 1928.]

LOUIS H. GABRIELSEN, *Respondent*, v. THE CITY OF SEATTLE *et al., Appellants,* STEPHEN BERG *et al., Defendants.*[1]

[1]Reported in 272 Pac. 723.

158

*Thomas J. L. Kennedy, Arthur Schramm,* and *A. C. Van Soelen,* for appellant City of Seattle.

*Roberts, Skeel & Holman* and *Altha Perry Curry,* for appellants Pacific Telephone & Telegraph Co. *et al.*

*Riddell & Brackett* and *T. N. Fowler,* for respondent.

FULLERTON, C. J.—Seneca street is a public street of the city of Seattle. Its course, at the place of the acci-

dent hereinafter mentioned, is approximately east and west. Between the streets known as Fourth avenue and Third avenue, it is paved with stone blocks, and has a downward slope of fifteen and four-tenths per cent. Midway of the block between the avenues named, is an alley extending north and south.

The appellant Pacific Telephone and Telegraph Company owns the lot lying on the north side of Seneca street, extending from Third avenue back to the alley. Prior to the time of the accident referred to, there had been constructed a nine-story building on the lot, and at that time the appellant was engaged in adding three stories thereto. The construction work was being performed by the appellant Sound Construction and Engineering Company under a contract entered into with the Pacific Telephone and Telegraph Company.

In the construction work it was found convenient to use a part of Seneca street for depositing material and erecting hoisting works. To that end, application was made to the city for a permit so to do, and such a permit was granted. The space used was of varying width, extending into the street at the alley some fourteen feet, and widening as it extended west to a distance of twenty feet. The space was enclosed by a temporary wall or fence.

On property lying to the south of the street, immediately east of the alley, the defendant Berg was also erecting a structure. He too had applied to the city for, and was granted, leave to use a part of the street in front of his property for use in connection with the construction of his building. This space extended into the street some twelve feet, and was fenced off with a structure similar to that used by the other builders. Measured laterally at the alley, between the lines of

the structures, the passage way left in the street was sixteen feet wide; measured diagonally between the corners of the structures, the distance was twenty-six feet. While the passage way left open for travel would permit an automobile to be driven straight up or straight down the street, the more usual method seems to have been, when passing from Fourth avenue to Third, to enter the street on its right side, pass down to the alley and there turn between the structures to the left, and then pass down the street on its left side for the remainder of the way.

On the morning of August 17, 1926, after the buildings had been in course of construction for about one month, the respondent, Gabrielsen, was painting a sign located above the sidewalk on the south side of Seneca street where the street intersects with Third avenue. The sign was elevated some distance above the sidewalk, and he was standing on a ladder. At that time the defendant Perrine started down the street from Fourth avenue. He was driving a Ford touring car. For the first part of the way, he drove in the usual course. As he approached the alley and was making the turn, he observed a milk truck, going in the same direction, the driver of which was having trouble getting down the street. To quote his own narration:

"He (the driver of the milk truck) had been going slowly, and he started up again. He started up his car a little bit, and I was about ten feet behind him, when he stopped again. He was having a hard time. His car began swerving to the left, and when he put on his brakes, I put on my brakes too, and that made it start to skid. I had my brakes set, and I started to skid, and bent to the left and tried to avoid him. Just as I got to the alley there was grease on there, and it caused me to skid to the left, and, by doing so in time to avoid hitting him, the car started to skid and went over the sidewalk, down on the sidewalk until I got to

the corner, and to avoid hitting the lamp post, I swerved the car to the left and went over Third avenue, and stopped the car almost to the alley between Second and Third on Seneca.''

Elsewhere Perrine testified to an undue accumulation of grease on the street, particularly at the alley where cars driven over the street made the turn. His testimony is not clear—at least it is not so to us—as to the place where the car he was driving entered onto the sidewalk; however, the shortest measurement given as the distance between that place and the place where the respondent was working, was some one hundred and ten feet. Other witnesses for the respondent testified to an undue accumulation of oil and grease on the street at the place where Perrine's automobile began to skid. Others, however, on the part of the appellants, testified that there was no more oil or grease on that street than there was on the streets generally in the city of Seattle, and not so much as there was upon some of the streets more traveled by automobiles than was this one. They accounted for its unusual slipperiness on the day in question by the fact, conceded by all of the witnesses, that it was raining quite hard on that morning.

As the defendant Perrine passed the respondent on his course down the sidewalk, he struck the ladder on which the respondent was standing, knocking it over and causing the respondent to fall. From the fall, the respondent received severe if not permanent injuries. In this action, brought to recover for the injuries suffered, the respondent made defendants the city of Seattle, the Pacific Telephone and Telegraph Company, the Sound Construction and Engineering Company, Berg and his wife, and Perrine. At the trial, the jury returned a verdict in his favor against all of

the defendants except Berg and wife, and a judgment was entered in accordance with the verdict.

In his complaint, the respondent charged the defendant Perrine with negligence in driving his automobile; averring that he drove at an excessive rate of speed, and failed to keep it under control. As to the other defendants, he charged them with contributing to the negligence of the defendant Perrine by placing unlawful obstructions in the street, and by suffering the street, particularly at the alley-way, to become covered with an undue accumulation of oil and grease, rendering it dangerous to operate automobiles over it.

The defendant Perrine has not appealed from the judgment entered, and, of course, in so far as the judgment affects him, it is not a matter of concern in this court. On another branch of the case, however, it was thought material to inquire whether there was evidence from which the jury could find that Perrine was guilty of negligence in the operation of his automobile. But, without detailing the evidence, we think it was sufficient to warrant the jury in finding that he was negligent in this respect. It seems to us that it points to negligence in two particulars—that he drove down the street, in the light of the situation apparent to him, at an excessive rate of speed, and that the brakes on the automobile were so far out of condition as to be practically useless.

The trial court, in its charge to the jury, while it stated with some minuteness the issues made by the pleadings, did not take the view that the obstructions placed in the street by the defendants who were engaged in the construction of their buildings, were in any sense unlawful or to be classified as nuisances. On the contrary it charged the jury, in substance, that the city of Seattle, in the exercise of its governmental

functions, has the power and right to close any of its streets, either in whole or in part, whenever it deems it reasonably necessary so to do, and that it could exercise this right in favor of contractors and builders engaged in construction work upon property adjacent to the street.

The court permitted a recovery against the city on the theory that the city was negligent in its care of that part of the particular street which it permitted to remain open for public travel, in that it suffered to accumulate and remain thereon oil and grease in such quantities as to render it dangerous for public travel.

The theory on which it permitted the contractor and owners to be held, it stated to the jury in the following language:

"You are instructed that a property owner whose property abuts upon a city street has the right, if he is permitted to do so by the city, to make temporary use of a part of the surface of such street for the deposit thereon of building materials, machinery or equipment necessary for the construction or repair of his building. The construction and maintenance of public streets are, however, for the primary purpose of furnishing a highway for the use of public travel and if the temporary use of the surface of the street by an adjacent property owner leaves the remaining passageway in a dangerous condition, or in such condition that a reasonably careful and prudent person viewing the situation would have anticipated that the remaining passageway would become greasy and slippery and in a dangerous condition to the ordinary methods of travel, then such temporary use would be negligence upon the part of the property owner, contractor or lessee responsible for its maintenance, in spite of the fact that the city may have consented to such temporary use by issuing a permit for such maintenance, and the property owner, lessee or contractor for whose benefit the said permit was issued and temporary use granted, would each be liable jointly with the city to the plaintiff for such injuries, if any, as re-

sulted to the plaintiff and were proximately caused by the said temporary use of the street.''

Noticing the appeal on the part of the city, it is first contended that the trial court erred in refusing to grant its motion for a directed verdict. The city argues that it cannot be held responsible for the slippery condition of its streets, caused by oil and grease deposited thereon by passing automobiles. It is common knowledge, of course, that automobiles driven over the public highways continuously deposit oil and grease thereon, and it is common knowledge that no practical method has yet been perfected by which such depositing can be prevented. It is common knowledge, also, that rain falling upon the oil and grease deposited upon paved highways increases their slipperiness, and increases the danger of operating automobiles over them.

But as these things are known to every operator of an automobile, the courts would not, in the absence of proofs of an unusual condition, permit the operator himself to recover against the public body, whose duty it is to keep the highways in repair, for an accident arising out of a slippery condition caused by these means; this for the reason, if for no other, that the operator knows the conditions, and in using the streets so knowing the conditions, takes upon himself the risk of injury arising therefrom.

But there is sufficient in the present record to warrant the jury in finding that the conditions here were unusual. The city had permitted a part of the street to be closed to the traveling public for the time being, thereby confining the general traffic to a space narrower than that to which it would otherwise be confined, and thereby causing an amount of oil and grease to be deposited thereon in a narrowed space not usual when subjected to its ordinary use. There was evi-

dence, also, from which the jury could well find that the slippery condition of the streets, by reason of the undue accumulated oil and grease deposited thereon, caused the automobile of the defendant Perrine to skid and get beyond his control, thereby contributing to the injury inflicted upon the respondent.

The question then arises whether the city is liable to answer for the injuries so inflicted. It is so liable, we think, unless it must be said that under no circumstances and under no conditions can a city be held liable for accidents arising from the accumulation of grease and oil upon its streets. But the rule does not go to this extent. The city must exercise reasonable diligence in keeping its streets safe for ordinary travel, and is liable to answer for injuries arising from unusual conditions causing them to become unsafe, whatever may be the nature of the condition which gives rise to the cause. In this instance, therefore, if the narrowed space did cause an undue accumulation of oil and grease thereon, the city was bound to anticipate that the hazards incident to the users of the streets would be increased, and is bound to answer for an injury arising thereon, of which the increased hazard was the proximate cause, or one of the proximate causes if there were more than one.

The city's counsel argue further that the cause of the respondent's injury was the lack of control which the defendant Perrine had over his automobile, not the grease and oil upon the street; in other words, that the negligence of the city was not the proximate cause of the injury. The accident was indeed a peculiar one, and no doubt, as we have before noted, the defendant Perrine's negligence contributed thereto. But the question is, was his negligence the sole cause of the injury or, stated in another way, did the city's

negligence contribute thereto. If the city's negligence did so contribute, the proximate cause is found in the combined negligence of both of the parties, and each is liable for the injurious consequences arising therefrom.

"If the concurrent negligence of two or more persons combined together results in an injury to a third person he may recover from either or all." *Jones v. Spokane, Portland & Seattle R. Co.,* 69 Wash. 12, 124 Pac. 142.

There was, we think, sufficient evidence on the question to carry the case to the jury.

■ Bearing on the liability of the city, the court gave to the jury the following instructions:

"I charge you that the city of Seattle, in the exercise of its governmental functions, has the power and the right to close any such street or thoroughfare, either in whole or in part, and in the exercise of that right may designate such parts of any street or thoroughfare as may be closed and occupied by contractors engaged in construction work, and may do this whenever it is deemed properly necessary by the city so to do."

"Reasonable care in the upkeep of an outlying and little used street might be gross negligence when applied to much used streets in the more congested business portion of the city."

It is objected to the first of the paragraphs that it is not justified by the evidence, is misleading, and induced the jury to return a verdict against the city on the theory that the city should have closed the street to traffic entirely. But we find nothing in the record which justifies these conclusions. The question whether the city had the authority to close the street entirely was not, it is true, presented by the record, but whether it had authority to close it in part was so presented. It was within the province of the court to instruct the

jury upon that question, and, in the performance of that duty, to state that the city had the authority to close the street, in whole or in part, could not, in our opinion, have been misleading; at least we cannot conceive that it was so far misleading as to induce the jury to believe that the court meant that it was the duty of the city in the particular instance to close the street entirely to traffic.

As to the second branch of the instruction, it is said that it is not a correct statement of the law, that it has no relation to the evidentiary facts, and is a comment by the court on the evidence. The statement as a truism has the sanction of this court as well as that of many others, and we fail to see, and the appellant has not enlightened us, wherein it is a comment on the facts. Its pertinency to the facts shown in the record may not be easily observable, but conceding that it had no pertinency, it is not an error fatal to the judgment. The giving of mere abstract instructions, correct in principle, is not grounds for reversal, unless their tendency is to confuse or mislead the jury. We can see nothing in this instruction which could have a tendency to confuse or mislead.

It is next argued that the verdict is to such an extent against the weight of the evidence that it was an abuse of discretion on the part of the trial court not to set it aside and grant a new trial. Our examination of the evidence indeed convinces us that the jury could well have found for the other side. But, as we have before noted, the verdict is not without substantial evidence in its support, and we cannot conclude that in such a case the trial court abused its discretion by failing to grant a new trial.

Finally, it is contended on behalf of the city that the respondent must fail of recovery because he

elected, prior to the commencement of his action, to take compensation for his injuries under the workmen's compensation act. But whether he so elected depended upon facts which it was the province of the jury to determine, and as they found the facts against the city on competent evidence and under proper instructions, we find no warrant for interfering with their verdict.

Passing to the appeals of the Pacific Telephone and Telegraph Company and the Sound Construction and Engineering Company, it will be observed that the court instructed the jury in substance that the appellants could be held upon both or either of two possible conditions: First, if they found that the obstructions placed in the street by the appellants left the remaining passage way in a dangerous condition; and, second, if they found that the obstructions left the remaining passage way in such a condition that a reasonably careful and prudent person would have anticipated that the way would become in a dangerous condition from the accumulation of oil and grease thereon.

It is our opinion that this instruction is not justified by the record. As to its first branch, we find nothing in the record which would justify the conclusion that the obstruction placed therein left the remaining part of the street in a dangerous condition. It is self-evident, of course, that the obstruction left that part of the street less convenient for travel than it was in its ordinary condition, and proves that more care was required of users passing over it than otherwise would be required, but it in no manner proves that its condition was left dangerous. We think, moreover, that the instruction was inapplicable to the situation for another reason. It is a recognized rule that the right of public travel over a street is subject to such inci-

dental, temporary obstruction as necessity may require (*Lund v. St. Paul M. & M. R. Co.,* 31 Wash. 286, 71 Pac. 1032, 96 Am. St. 906; 61 L. R. A. 506; *Shepherd v. Baltimore & Ohio R. Co.,* 130 U. S. 426); and a use such as the one in this instance is among the recognized necessities, and possibly the most common for which permission to obstruct temporarily a part of a street is granted. There was, therefore, nothing wrongful or illegal in the permission granted. The remaining part of the street was under the absolute control of the city authorities. In such control the appellants had no voice. They could neither say whether it was to remain open for use or whether it should be closed to use, and no rule of law permits them to be held for injuries arising from such use.

What we have said on the first branch of the instruction in the main answers the second. But it may be added that, after the appellants had obtained permission to use a part of the street, they occupied to the remainder much the same situation as a property owner occupies to a street upon which his property abuts. They owed the duty not to obstruct it themselves, and the duty not to place thereon any matter or substance which would render its use dangerous. But they owed no duty to enter upon and repair it if it became out of repair because of its use by others, and no duty to enter upon it and remove therefrom any substance, such as oil or grease, which others by their use deposited thereon. Indeed, it would seem that they could not lawfully do so, at least without the consent of the city authorities. 13 R. C. L., p. 84, par. 76. They cannot be held, therefore, for injuries caused to a member of the general public using the street by an accumulation of oil and grease thereon, even though they might have anticipated that such would be the

result if the street was left open to use by the general public.

The judgment, in so far as it affects the defendant Perrine and the appellant city of Seattle, is affirmed. As to the other appellants, the judgment is reversed and remanded with instructions to dismiss the action as to them.

TOLMAN, PARKER, MITCHELL, and FRENCH, JJ., concur.