THOMAS REYNOLDS, Administrator, Appellant, v. CHARLES W. ALLER et al., Appellees.

No. 44678.

MARCH 14, 1939.

Holliday & Myers. for appellant.

Hallagan, Fountain, Stewart & Cless and Paul W. Steward, for appellees.

RICHARDS, J.—The accident that gave rise to this suit occurred on December 12, 1937, at about 7 p. m. At that time primary highways No. 65 and No. 69, designated also as federal highways, in their route through Des Moines were located for a considerable distance upon East 14th street of that city. The portion of this street, traversed by these highways, that is material to our discussion extends south 886 feet from an east and west intersecting street known as Court avenue. This portion of East 14th street had been opened to traffic a week or ten days prior to the accident. New paving had been laid, 42

feet in width between curbs, and at the south end of the 886 feet a viaduct had been constructed across railroad tracks. The accident occurred on the paving and at a point that was between 160 and 200 feet north of the viaduct. Plaintiff's decedent and two other boys, James Raber and William Forest, meeting at the southeast corner of Court avenue and East 14th street, crossed to the west side of the latter street and walked south on the west half of the paving on East 14th street with the intention of seeing the viaduct. As they proceeded south, and for a considerable distance before the accident, they were in these relative positions, Raber walking on the west curb, Forest immediately east of Raber, walking on the paving, and plaintiff's decedent also walking on the paving was immediately east of Forest. The three were walking abreast in rather close proximity to each other. They were thus proceeding toward the south when a truck approaching from the north struck plaintiff's decedent and so injured him that he did not speak or move thereafter, and soon expired. Defendant Frank C. Aller was driving the truck with permission of defendant Charles W. Aller, the owner. At the close of plaintiff's evidence the defendants' motion for a directed verdict against plaintiff was sustained. From the judgment rendered on the verdict plaintiff has appealed, and assigns as error the ruling on the motion.

▆▆ As one ground of the motion defendants claimed that plaintiff had failed to sustain the burden of proving that his intestate was free from contributory negligence. Defendants not only contend that the facts and circumstances were such that therefrom a jury could not properly have found that decedent was free from contributory negligence, but also insist that decedent was violating a law of the road found in section 354-a of chapter 134 of the Acts of the 47th General Assembly which reads: ''Pedestrians shall at all times when walking on or along a highway, walk on the left side of such highway.'' In argument plaintiff concedes that decedent violated this statute if the term ''highway'' therein used is held to mean ''street'', making the statute applicable inside the limits of cities and towns. But, citing Shannon v. Martin, 164 Ga. 872, 139 S. E. 671, 54 A. L. R. 1246, appellant urges that this word highway is not inclusive of streets in cities and towns and that the sec-

tion has no application to persons walking on or along such streets.

The dissimilarity between the statutes the Georgia court construed and the provisions found in chapter 134 is such that the Georgia authority is of slight if of any applicability. But from reading chapter 134 in its entirety, in the manner the Georgia court viewed the whole of the act it construed, it becomes evident that in many sections of the chapter the legislature either intended that the word highway be inclusive of streets in towns and cities in the broad generic sense of "highway", or intended things that, in its wisdom, the legislature could hardly have had in mind. A few instances will illustrate. Section 205 provides that no person shall drive a motor vehicle upon a *highway* unless he has a valid operator's or chauffeur's license. It is quite improbable that this prohibition was not intended to affect those driving on streets in cities and towns. Section 286 vests in local authorities the power in their respective jurisdictions to place traffic-control devices upon *highways* under their jurisdiction. Section 320 requires that the highway commission furnish and place on primary roads or on extensions of primary roads within cities or towns certain signs respecting speed, and provides that on all other *main highways* the city shall so do. Section 375 provides that "Primary roads, and extensions of primary roads within cities and towns are hereby designated as *through highways*." (Italics supplied.) East 14th street was such a *through highway* within the city of Des Moines. To such a highway, though it may traverse a street, section 354-a was quite evidently intended to have application. For imputing a contrary intent we discover no sound reason when the whole act is read. A lessened hazard for the pedestrians on all highways was a probable end to be accomplished in this enactment. It follows that plaintiff's decedent was not only violating section 354-a, but the record appears to be such that, under the holdings in Lindloff v. Duecker, 217 Iowa 326, 251 N. W. 698; Fortman v. McBride, 220 Iowa 1003, 263 N. W. 345; Denny v. Augustine, 223 Iowa 1202, 275 N. W. 117, cases antedating the enactment of the section, a jury would not have been warranted in finding that plaintiff's decedent was free from contributory negligence. Not only were decedent and his companions making no observations with respect to on-coming traffic from the rear to which they had turned their backs as they

proceeded upon the paving, but the night was dark and at no place along the 886 feet were there any street lights or other illumination until the viaduct was reached, excepting as vehicles might be lighting their own way. Decedent was walking at a distance of 3 or 4 feet east of the curbing. His companions neither saw nor heard the truck nor observed any lights or reflections as the truck approached. Decedent in like manner either failed to observe these things or if he did observe them continued walking along as he had been doing for a considerable distance. The age of plaintiff's decedent was 15 years, William Forest's was about 17 years, with no showing as to Raber in that respect. Upon the whole record it is apparent that a jury could not have found that decedent was free from contributory negligence.

Plaintiff, attempting to avoid the effect of this conclusion, points out that he pleaded as one of the particulars in which defendant-driver was negligent, the following: "In failing, after discovering plaintiff's decedent, to slow down or stop or turn or give a signal in time to avoid colliding with plaintiff's decedent, when in the exercise of ordinary care, he could have done so." Plaintiff urges that this allegation was supported by evidence and that though decedent may have been contributorily negligent the case should have been submitted to the jury under the doctrine of last clear chance. Plaintiff concedes that no one testified that the defendant-driver saw decedent at any time before the accident, and concedes that the doctrine of last clear chance as interpreted in this jurisdiction applies only where defendant had actual knowledge of plaintiff's peril and after acquiring such knowledge could have avoided the injury by the exercise of due care and failed to do so. This brings us to the controversial portion of plaintiff's argument, that is, his proposition that though there is no direct testimony that plaintiff's decedent in a place of peril was seen by defendant-driver, nevertheless defendant's actual knowledge of plaintiff's perilous situation may be proven by circumstantial evidence. Plaintiff quotes excerpts, more or less in the language of his proposition, from several Iowa cases including Williams v. Mason City & Ft. D. Ry. Co., 205 Iowa 446, 214 N. W. 692; Carr v. Inter-Urban R. Co., 185 Iowa 872, 171 N. W. 167; Groves v. City of Webster City, 222 Iowa 849, 270 N. W. 329; Lynch v. Des Moines R. Co., 215 Iowa 1119, 245 N. W. 219.

Defendants urge that several of these excerpts were in the nature of dictum because there was in the record direct testimony that defendant saw plaintiff in a place of peril. Defendants also suggest that, when in these cases the court made the statements on which plaintiff relies, the application of the court's language was to a particular and peculiar circumstance, that is, the situation that obtained when a motorman had a clear and unobstructed view of his track and owed the duty to look ahead constantly. Defendants also say that in jurisdictions so interpreting the last clear chance doctrine as to permit a jury to find that the circumstances were such that defendant should have seen and appreciated plaintiff's peril in time to have avoided the injury, liability attaches to defendant under the doctrine only in event it is further found by the jury that plaintiff's negligence had terminated or culminated in a situation of peril, from which plaintiff by use of ordinary care could not then extricate himself. We reserve discussion of these apparently important questions, as their determination is not essential to this case, because if we take at par value (arguendo only) the plaintiff's proposition, stated in the general phraseology he adopts, that actual seeing of plaintiff in a place of peril may be proven by circumstantial evidence, the record does not even then support the claim that the instant case should have been submitted under the doctrine. The circumstances which plaintiff says were evidence that the defendant-driver saw decedent in peril are these—headlights on the truck were at all times turned on, and a witness located at about the Court avenue intersection testified that before the accident happened he was able to see the boys, revealed by the truck's lights, at and near the place of the accident. This does not prove more than that defendant-driver may have seen decedent. Plaintiff so admits, and at this point appends to these circumstances an inference that defendant-driver, being under a duty to keep a lookout ahead, presumably performed this duty and in so doing saw decedent. For several reasons we are unable to follow the argument or adopt the conclusion. We do not pass on one possible reason, i. e., that the duty of the driver of a motor vehicle does not require that he keep a lookout constantly and use all his senses to avoid the dangers of a collision as was deemed to be approximately the extent of duty of a motorman in some of the authorities plaintiff has cited. Fry v. Smith, 217 Iowa

1295, 253 N. W. 147. But a controlling reason is that plaintiff made a record which negatives what he attempts to show by inference. That is, one of the specifications of negligence alleged by plaintiff, and at no time withdrawn, was that the defendant-driver was guilty of negligence in not keeping a proper lookout. An allegation binds the one who makes it. When its truth militates against the party who pled it, it must be taken as true as against him. Whelton v. C. M. & St. P. R. Co., 189 Iowa 918, 179 N. W. 140; Wilson v. Oxborrow, 220 Iowa 1135, 264 N. W. 1. Upon the record he made plaintiff cannot deny that defendant-driver was not keeping a proper lookout. His effort to establish the contrary by inference or presumption is unavailing—no issue remaining concerning the fact that, as against plaintiff, must be taken as true. Taking out of plaintiff's thesis his assumption that defendant was keeping the lookout his duty required, the dependent inference, that in performing this duty defendant-driver saw decedent, lacks any foundation. It is apparent, without discussing further reasons, that it was proper to refuse to submit the case on the doctrine of last clear chance. No errors appear. There is an affirmance.—Affirmed.

MITCHELL, C. J., and HAMILTON, OLIVER, STIGER, BLISS, SAGER, MILLER, and HALE, JJ., concur.