[No. 29105.   Department Two.   September 5, 1944.]

HENRIETTA THOMPSON, as *Administratrix, Appellant,* v. JAMES A. PORTER, JR., *et al., Respondents.*[1]

[1]Reported in 151 P. (2d) 433.

*Walter F. Fisher* and *Joseph W. Kindall,* for appellant.

*John D. MacGillivray,* for respondents.

ROBINSON, J.—In this cause a judgment of dismissal was entered upon a challenge to the evidence at the close of plaintiff's case. On appeal plaintiff raises but one question, which is stated in her opening brief as follows:

"Should the case have been submitted to the jury under the last clear chance doctrine when the evidence shows that the deceased was killed while walking with the traffic on the extreme edge of the pavement by a car striking him from behind while traveling at 50 miles per hour when the presence of the deceased was clearly visible to the driver of the car for a distance of several hundred feet, and the deceased was wholly unaware of the car coming from behind him and was oblivious to his own danger?"

It is so well-established that a plaintiff, when faced by such a challenge, is entitled to the benefit of all favorable evidence, as well as all reasonable favorable inferences therefrom, that we deem it unnecessary to cite authorities to that effect.

Upon an examination of the evidence adduced on behalf of the plaintiff, it appears beyond all question that, if the case had been sent to the jury, it would have been compelled to find that the plaintiff's husband was negligent, in that he was walking on the right-hand side of the roadway

in disobedience of that portion of Rem Rev. Stat., Vol. 7A, § 6360-101 [P. C. § 2696-859], which reads as follows:

" . ' . . Pedestrians on any public highway where no sidewalk is provided shall proceed on the extreme left-hand side of the roadway and upon meeting an oncoming vehicle shall step to their left and clear of the roadway."

As implied, however, in the appellant's statement of the question involved in the appeal, the record is such that, if the case had been sent to the jury, it could have found that the visibility was such that the defendant, Dr. Porter, could have easily seen Mr. Thompson for a distance of several hundred feet, and, as he approached him, had he been keeping a proper lookout, he should have realized that Thompson was oblivious to his danger. It is contended that the plaintiff, therefore, made a case for the jury, under the so-called doctrine of last clear chance.

It is further contended in support of the appeal that there was sufficient circumstantial evidence to warrant a jury in finding that Dr. Porter did, in fact, see Mr. Thompson before colliding with him. If there was, that fact, taken in connection with other evidence in the case, would have made the doctrine of last clear chance applicable. This contention will, therefore, be considered first.

That negligence may be proven by circumstantial evidence is so thoroughly settled that, again, we feel that no citation of supporting authority is necessary. It is a rule of necessity; for, when one's negligence depends upon whether or not he saw a thing, no one but he can give direct evidence, and, unless the fact that he did see it can be shown by circumstantial evidence, his statement that he did not see it would completely foreclose the issue.

In an Iowa case very similar to this in its facts and in which there was a directed verdict at the close of plaintiff's evidence, it was contended that the case should have been sent to the jury on the ground that it was for it to determine whether or not the defendant actually saw the plaintiff. It was held that, since the plaintiff in his complaint had alleged that the defendant driver was guilty of negligence in not keeping a lookout and had not withdrawn

that allegation, he was in no position to demand that the case go to the jury on the theory that the defendant did actually see the man he ran down. *Reynolds v. Aller,* 226 Iowa 642, 284 N. W. 825. In the instant case, the plaintiff likewise pleaded that the defendant was negligent "in failing to keep a proper lookout ahead of said automobile." But in view of the fact that she also pleaded that the defendant Porter "should have seen, and did see, the said Egbert A. Thompson walking on said highway," we think the decision of the Iowa court not strictly in point. Besides, in our nontechnical practice, it is the evidence admitted, including that which was not legally admissible, but which went in without objection, that makes the issues of fact.

Before considering whether or not the plaintiff adduced evidence from which a jury could have found that Dr. Porter saw Thompson in time to have avoided him, it seems advisable to determine the exact bearing and importance of that matter. It is contended that there was such evidence, and that the court should, therefore, have sent the case to the jury with an instruction on the so-called doctrine of last clear chance. Of this doctrine the supreme court of the United States, in the case of *Kansas City Southern R. Co. v. Ellzey,* 275 U. S. 236, 241, 72 L. Ed. 259, 48 S. Ct. 80, said:

"That doctrine, . . . amounts to no more than this, that a negligent defendant will be held liable to a negligent plaintiff if the defendant, aware of the plaintiff's peril or unaware of it only through carelessness, had in fact a later opportunity than the plaintiff to avert an accident."

But a little consideration of that definition will at once reveal that it is somewhat oversimplified and not susceptible of practical application. For example, the appellant in this case might well point to the words, "or unaware of it only through carelessness," as sustaining the first position she takes in this case, and the respondent can as well take comfort in the words, "had in fact a later opportunity than the plaintiff to avert an accident." For how could the defendant have, in fact, a later opportunity than the plaintiff to avoid the accident up to the very moment of impact by

merely stepping off the roadway? The fact is that there are but few, if any, legal doctrines that are more difficult of logical application to varied and ever-varying situations than that known as the doctrine of last clear chance, and there is accordingly a vast amount of case law dealing with the subject. A wide research has revealed that the experience of the state courts in applying the doctrine has been quite similar. Beginning with broad statements, they have found that they are too broad and have modified them, only again to find that the rules laid down do not fit all situations and must be explained or modified again; and, perhaps, this process has not yet been completed.

■ In 1913, this court, speaking through Judge Ellis, made an attempt to clarify the last clear chance rule in *Mosso. v. Stanton Co.*, 75 Wash. 220, 134 Pac. 941, L. R. A. 1916A, 943. We quote from this decision at some length:

"The courts are wide of an agreement as to the extent of the last clear chance doctrine as applied to the operation of trains, street cars, automobiles and the like. But what we conceive to be the sounder view is this: assuming that a traveler has negligently placed himself in a dangerous situation upon the highway, then, as we have seen, whenever the person in control of such agency actually sees the traveler's situation and should appreciate his danger, the last chance rule applies, without regard to the continuing negligence of the traveler concurring with that of the operator up to the very instant of the injury. A second situation to which the rule applies is this: where the person in control of such agency, by keeping a reasonably careful lookout commensurate with the dangerous character of the agency and the nature of the locality, could have discovered and appreciated the traveler's perilous situation in time, by the exercise of reasonable care, to avoid injuring him, and injury results from the failure to keep such lookout and to exercise such care, then the last chance rule applies, regardless of the traveler's prior negligence, whenever that negligence has terminated or culminated in a situation of peril from which the exercise of ordinary care on his part would not thereafter extricate him. This last phase of the rule applies whenever injury results from new negligence or from a continuance of the operator's negligence after that of the traveler has so ceased or culminated.

"The application of the rule to the first situation, as above indicated,. needs no support outside of simple considerations of humanity. Any other view would condone wilful or wanton injury. The application of the rule to the second situation indicated has been sustained by this court, and we think soundly, in a case of injury to an automobile stalled through its owner's negligence on a railway crossing.

. . .

"An examination of a vast number of authorities induces our conviction that the application of the rule as above outlined is much broader than that countenanced by many courts, and is as broad as can be applied without in effect overruling all of our own decisions sustaining the defense of contributory negligence and adopting in its stead the doctrine of comparative negligence, a doctrine against which this court has set its face from the beginning."

Eleven years after the decision in *Mosso v. Stanton Co.,* the court, acknowledging that the rule laid down in that case had, in the intervening years, not always been correctly applied, again restated the rule in an opinion prepared by Judge Mackintosh in *Leftridge v. Seattle,* 130 Wash. 541, 545, 228 Pac. 302:

"Going no farther back into the decisions than to *Mosso v. Stanton Co.,* 75 Wash. 220, 134 Pac. 941, L. R. A. 1916A, 943, we find that case endeavored to clarify the last clear chance rule and define two separate conditions under which it was applicable, and the rule is announced as (1) that where the defendant *actually* saw the peril of a traveler on the highway and should have appreciated the danger and failed to exercise reasonable care to avoid injury, such failure made the defendant liable, although the plaintiff's negligence may have continued up to the instant of the injury; but (2) that where the defendant did not actually see the peril of the plaintiff, but by keeping a reasonably careful lookout commensurate with the dangerous character of the agency and the locality *should have seen* the peril and appreciated it in time, by the exercise of reasonable care, to have avoided the injury, and failure to escape the injury results from failure to keep that lookout and exercise that care, the defendant was liable only when the plaintiff's negligence had terminated or culminated in a situation of peril from which the plaintiff could not, by the exercise of reasonable care, extricate himself.

"Thus we have two different situations to which the last clear chance rule applies. In the one, the plaintiff's negligence may continue up to the time of the injury if the defendant *actually sees* the peril; in the second, the plaintiff's negligence must have terminated if the defendant did not actually see the peril, but by the exercise of reasonable care *should have seen* it.

"This rule, as we have said, has been somewhat confused by later decisions which have failed to recognize the distinction between situations where the defendant actually saw and situations where, by the exercise of reasonable care, the defendant should have seen the position of the plaintiff."

It appears from the appellant's citations that the rule thus restated in the *Leftridge* case has again been somewhat confused by general and, perhaps, inexact statements in later decisions of this court; but it is, nevertheless, an inescapable fact that the rule has been repeatedly, literally applied and often quoted from the time of its announcement to the present, or nearly present, day. For comparatively recent examples, see *Huber v. Hemrich Brewing Co.* (1936), 188 Wash. 235, 243, 62 P. (2d) 451; *Warner v. Keebler* (1939), 200 Wash. 608, 616, 94 P. (2d) 175; *Chadwick v. Ek* (1939), 1 Wn. (2d) 117, 132, 95 P. (2d) 398; *Colwell v. Nygaard* (1941), 8 Wn. (2d) 462, 478, 112 P. (2d) 838; and *Hopp v. Northern Pac. R. Co.,* 20 Wn. (2d) 439, 417, 147 P. (2d) 950, decided in April of this year, wherein the rule of the *Leftridge* case is quoted, and it is said of the case itself that it is "a landmark case that has been followed consistently by this court." As will be noted later in this opinion, it has been regarded by competent legal writers as one of the leading, if not the leading, American decision relating to the doctrine of last clear chance.

It is apparent that, in order to bring the instant case under situation (1), as postulated in the *Leftridge* case, it was necessary for the plaintiff to introduce evidence which would entitle the jury to find as a fact that defendant Porter *"actually* saw" Thompson's peril, as distinguished from evidence tending to prove that he should have seen him. If there is such evidence, the appellant's contention

that the case should not have been dismissed on defendants' challenge must be sustained.

We find, from an examination of the statement of facts, it was stipulated that, at the place the accident occurred, the highway which ran east and west was straight and nearly level, and that the concrete pavement was sixteen feet in width. There is evidence that the dirt shoulders on each side of the pavement were from two to three feet in width and sloped sharply into the flanking ditches. There is evidence that there had been no rain for several days; the concrete was dry; and the sky was clear. The accident happened on April 25, 1941, at least as late as 7:30 p. m., and possibly as late as eight o'clock. It is agreed that automobiles traveling along the highway, including the defendants' automobile, had their headlights burning. Mr. Swanson testified, in part, as follows:

"Q. At the time of the accident was it light or dark? A. Well, it wasn't dark, pitch dark. It was fairly light. I could notice the distant hills between the valleys."

Some of his evidence, as will be later shown, was more favorable to the plaintiff on this point.

Mr. Mercer, Mr. Thompson, and an eight year old daughter of Mercer were proceeding east on the right side of the road when, in obedience to the statute, they should have been on the left. Mercer was in the lead, pushing a bicycle on the right shoulder of the road. Thompson was immediately behind him, and the little Mercer girl somewhat behind him, also pushing her bicycle. At least three of the witnesses for plaintiff testified that Thompson was walking on the pavement, but at its extreme southerly edge. There is no testimony to the contrary.

When Swanson, coming from the east, topped the brow of a hill about six hundred feet from the pedestrians, he saw them coming toward him, recognizing Thompson because he was a very large man, weighing about 240 pounds. Dorice Wolfe, a passenger in Swanson's car, saw them when they were about 250 feet distant; that is, they saw both Mercer and Thompson. Neither of them saw the little girl.

This testimony would have entitled the jury to find that the visibility was at least fairly good.

As Swanson drew near to the pedestrians, perhaps at a distance of about 150 feet, he pulled over to the north shoulder of the road, because there was a car coming towards him (Porter's), and he knew that it would need room to pass the pedestrians. He thought Porter was traveling "45 to 50 miles an hour." Swanson's right wheels in this maneuver were about two feet off the pavement, and, when he met Porter, just after he himself had met and passed the pedestrians, there were about two feet between the sides of their cars. This testimony of Swanson, corroborated by his companion, Miss Wolfe, is strongly relied on by the appellant.

Mercer also testified that Swanson drove out on the shoulder of the road just before he passed them. All testified that the accident happened immediately afterwards, within a second or two. Mercer said he did not see the Porter car.

"Q. And as you were walking along there, you were, practically all of the time, looking east, ahead of you, and Mr. Thompson was doing the same? A. Yes."

Evidence was introduced on behalf of the plaintiff to the effect that Porter, immediately after the accident, said that he did not see Thompson, but did see the little Mercer girl. This tended to prove plaintiff's allegation that, if Porter was keeping a proper lookout, he *should have seen* Thompson.

It must be kept in mind at all times, however, that, in order to have the case sent to the jury under (1) of the formula laid down in the *Leftridge* case, it was incumbent upon the plaintiff to introduce evidence that Porter *"actually* saw" Thompson; for negligence will not be presumed, and particularly such wanton negligence as knowingly leaving the middle of an unobstructed roadway and running a man down who was walking at its edge.

While we think the evidence would have fully warranted the jury in finding that the defendant was negligent in not seeing Thompson, we think it was not sufficient to

warrant a finding that he did see him. The circumstance, clearly shown, that Porter was driving in the middle of the road when he met Swanson just prior to the accident, was strongly stressed on oral argument. It is queried: How can we account for his driving in the middle of the road except by assuming that he saw the pedestrians and had turned out to pass them? But it is a matter of common knowledge that many drivers drive in the middle of the road at times, and that some customarily do so when the road is comparatively narrow and flanked by deep ditches, as this road was. Besides there was positive testimony by a daughter of the deceased that Porter was already driving in the middle of the road when he passed the Thompson home. This was six hundred feet before he caught up with the pedestrians, and it sufficiently appears that no one was walking along the road at that point.

It is our opinion that the trial judge rightly ruled that there was not sufficient evidence to take the case to the jury under the first division of the last clear chance rule.

Appellant further contends that the case should have been sent to the jury under the second division of the rule. Under that division the defendant may be held liable under the doctrine of last clear chance, notwithstanding the negligence of the injured person and even if he did not see him, but should have seen his peril and appreciated it in time to have, by reasonable care, avoided the injury. But, under those circumstances, the defendant can *only* be held liable:

" . . . when the plaintiff's negligence had terminated or culminated in a situation of peril from which the plaintiff could not, by the exercise of reasonable care, extricate himself."

In summing up the two situations to which the last clear chance rule applies, the court said, in the *Leftridge* case, and this is the paragraph of the opinion so frequently quoted in our own opinions:

"Thus we have two different situations to which the last clear chance rule applies. In the one, the plaintiff's negligence may continue up to the time of the injury if the

defendant *actually sees* the peril; in the second, the plaintiff's negligence must have terminated if the defendant did not actually see the peril, but by the exercise of reasonable care *should have seen* it."

Certainly, in this case Thompson's negligence had not terminated, and it would seem equally certain that it had not culminated in a situation of peril from which he could not extricate himself. He could have stepped off the pavement at any instant. In fact, we have heretofore squarely so decided.

"In walking on the right hand side of the highway, the respondent violated the statutory provision (Rem. Rev. Stat., § 6362-41 [P. C. § 196-41], subd. (6)) which requires pedestrians on highways to travel on and along the left side of the highway, and that pedestrians upon meeting an oncoming vehicle shall step off the paved or main traveled portion of the highway. . . . His negligence never terminated nor culminated in a situation of peril from which he could not by the exercise of reasonable care extricate himself. . His negligence continued up to the instant of the injury." *Steen v. Hedstrom,* 189 Wash. 75, 78, 63 P. (2d) 507.

The appellant, however, urges that one who is oblivious to his danger is, in effect, as unable to extricate himself as one who is physically unable to do so. It is further said that it is just as reprehensible to run down a man who is apparently oblivious to his peril as it is to run down one who, through negligence, has gotten his foot stuck in the road and is obviously physically unable to extricate it. That this is so must be conceded. But, in applying the last clear chance rule, we are not exclusively concerned with the negligence of the defendant in the action. In fact, we are primarily concerned with that party who seeks to have his own negligence excused by the application of the rule. The negligence of the man unable to extricate his foot has terminated. His negligence is remote, rather than proximate and causal. The man walking on the wrong side of the road in disobedience to the statute is not only negligent *per se* until and at the very moment of his injury, but, moreover, his obliviousness to his danger in so proceeding is in

and of itself negligence. In fact, under the theory urged, if he should be run down, he would be in a better position to have his negligence excused, under the last clear chance rule, if he took no care whatever for his own safety than if he kept careful watch for cars coming up from behind; for, if he did that, he might have real difficulty in convincing a jury that he was mentally in a state of oblivion.

. If we should interpret the second provision of the rule of the *Leftridge* case as appellant urges us to do, it would seem that, in future cases of this type in which one was run down while walking on the wrong side of the highway, in disobedience of the statute and without paying any attention whatever to cars that might be coming up behind him, he would need only to testify that the visibility was good in order to make a case for the jury under the doctrine of last clear chance.

It must be remembered that the doctrine is invoked in all types of negligence cases, including that especially large class arising out of automobile collisions. The supreme court of Missouri has so assiduously, step by step, liberalized the rule of last clear chance that it has there become known as the "humanitarian doctrine." Apparently, the major step in that development was the adoption of the rule or theory which counsel for the appellant urges us to adopt. We quote from the decision of that court in *Banks v. Morris & Co.*, 302 Mo. 254, 267, 257 S. W. 482:

"It is of no consequence what brings about, or continues, the situation of peril. It may be through the obliviousness of the one imperiled, or through his inability to extricate himself from his environment, or through his efforts to rescue another, or through his sheer hardihood or recklessness. But regardless of what occasions his peril, the law out of its extreme regard for human life makes it the duty of another who sees him in peril to exercise ordinary care to prevent injury or death."

(In this case, it was also held, expressly overruling earlier decisions to the contrary, that plaintiff's obliviousness need not be pleaded.)

It appears that the doctrine, as stated in *Banks v. Morris & Co.*, has been of great consequence in its effects on the

law governing automobile collisions in the state of Missouri. We quote from an opinion (although it is a dissenting opinion) written by the chief justice of the supreme court of Missouri in 1936 in the case of *Perkins v. Terminal R. Ass'n,* 340 Mo. 868, 899, 102 S. W. (2d) 915, 933:

"So now under the *Banks-Morris* case, to put a concrete illustration, if A and B, both driving automobiles on the public highway, collide, and A brings a suit under the humanitarian doctrine, he can recover damages from B on the bald admission that notwithstanding his own statutory duty to use the highest degree of care, nevertheless he recklessly tried to pass in front of B's car though he saw B coming, knew of the danger, and could have avoided the collision. And this is true even though B was only guilty of the comparatively innocent dereliction of failing to see A in or approaching a position of imminent peril and thereafter to avert the casualty if, in the opinion of the jury, B could by exercising the highest degree of care have seen and acted in time to save A. We have gone to such lengths in expanding our so-called humanitarian or last chance doctrine that it is now sometimes facetiously referred to by lawyers from other jurisdictions as the 'no chance doctrine,' from the defendant's standpoint.

"But instead of being a 'no chance' doctrine it really is a 'double chance' doctrine; for under it the adversary parties can recover against each other for the same casualty. It is not a mere question of which one gets his suit filed first. If two automobiles, street cars or trains of different ownership collide, in the action and cross-action following, each party may admit that he saw the other coming, knew of the danger, and could have avoided the collision, and still each can recover his damage from the other, if that other in the exercise of due care could have averted it. Each, in his action against the other is excused from the consequences of his own negligence proximately causing the collision, but in his defense against the cross-action of the other he is liable for that self-same negligence."

We must not leave the impression, however, that the position taken by the appellant's counsel is supported by Missouri decisions only. Although we have not found that any other court has gone so far as to employ the doctrine to excuse "sheer recklessness" (see quotation from *Banks v. Morris & Co., supra*), there are a very considerable num-

ber of decisions in other states which support the appellant's contention that it should be employed to excuse the negligence of one who is not exercising care for his own safety, because he has permitted himself to become mentally oblivious. The opinions in the following cases are among the best-reasoned of that type that we have found: *Styris v. Folk,* 146 P. (2d) (Nev.) 782 (decided March, 1944); *Smith v. Gould,* 110 W. Va. 579, 159 S. E. 53, 92 A. L. R. 28; *Girdner v. Union Oil Co.,* 216 Cal. 197, 13 P. (2d) 915; *Stearns v. Graves,* 62 Idaho 312, 111 P. (2d) 882. See, also, 21 Va. Law Rev. 311; and Last Clear Chance; a Transitional Doctrine, 47 Yale Law Journal 704. This by no means exhausts the list of authorities favorable to the appellant's contention, but we omit further citations since all, or substantially all, of the important decisions on last clear chance may be found in the two A. L. R. notes to which we will now call attention.

Volume 92, A. L. R., published in 1934, contains a note entitled "Comment Note.—Doctrine of last clear chance," beginning on page 47, and continuing for more than one hundred pages. In its early pages, a history of the origin and development of the doctrine is given. At page 66, it arrives at what is called, in black-faced type, "Washington formula":

"The supreme court of the state of Washington has reduced the subject to the following formula, which, it is believed, to a great extent, though not entirely, harmonizes the actual decisions as regards factual situations involved in the cases, though opposed by general statements in many of them: . . ."

Then follows a quotation of the Washington rule, as stated in the opinion in the *Leftridge* case on page 545 of volume 130 of our reports. Following this, the author of the note, in a paragraph too long to be quoted here, demonstrates that that portion of the then tentative draft of the American Law Institute's Restatement of Torts dealing with last clear chance is in harmony with the "Washington formula." That paragraph is immediately followed by the following statement:

"Although the Washington formula is opposed in both aspects by many general statements, and there are probably not many individual cases which affirmatively support it in its entirety, it is believed that when actual decisions, rather than general statements which go beyond the factual situations involved, are considered, most of the cases may be reconciled with it, after making due allowance for differences already pointed out in the rules of law of the different jurisdictions which affect the preliminary questions whether the defendant was guilty of negligence after the peril arose, whether before or after its discovery, and whether or not the injured person's negligence was continuing and concurrent."

The balance of the comment note is largely devoted to establishing the above proposition.

In 1939, five years after the publication of the comment note, to which we have just called attention, and after the draft of the American Law Institute's Restatement of Torts had been made final, a supplement was published to the original comment. In this supplement (119 A. L. R. 1041-1094), all relevant cases decided since the publication of the original comment in 1934 are cited and digested in the footnotes. The conclusion reached by this supplemental examination is stated as follows:

"Study of the cases reported since the Comment [in 92 A. L. R.], with special reference to the finding or assumption of the essential facts, and legal principles which, though not distinctive to the doctrine itself, are relevant and important on the question of its applicability, indicates that in the result reached at least, they are upon the whole, but not without important exceptions, consistent with if they do not entirely support the conclusions under this head in the Comment (p. 149), and the position represented by the Washington formula (see Comment, p. 66), and the present annotation under heading, 'Scope and general discussion,' and the final text of the American Law Institute's Restatement of Torts, vol. 2, §§ 479, 480, supra, under heading 'Scope and general discussion.' "

An examination of the cases cited in the note convinces us that they warrant the conclusion above quoted. We are, therefore, not inclined to amend, or extend by interpretation, the rule or formula of the *Leftridge* case, and, be-

ing further of the opinion that it was correctly applied by the trial court in the case at bar, the judgment appealed from will stand affirmed.

It is so ordered.

SIMPSON, C. J., MILLARD, BLAKE, and MALLERY, JJ., concur.