[No. 34040.  Department Two.  October 3, 1957.]

CARL W. PATTERSON, *Respondent*, v. LEO W. KROGH, *Appellant.*[1]

[1]Reported in 316 P. (2d) 103.

*John D. MacGillivray* and *Willard W. Jones*, for appellant.

*Del Cary Smith* and *Del Cary Smith, Jr.*, for respondent.

DONWORTH, J.—Respondent brought this action to recover damages for personal injuries sustained as a result of an automobile accident. The trial court instructed the jury that respondent was guilty of contributory negligence as a matter of law, but submitted the case for their determination under both phases of the "last clear chance" doctrine. The jury returned a verdict adverse to appellant, and after the court's denial of his motion for judgment n.o.v. or, in the alternative, for a new trial, he has appealed from the judgment entered on the verdict.

The testimony of the principal witnesses regarding the accident may be summarized briefly as follows:

At about one o'clock a. m., on August 12, 1955, respondent's Hudson automobile, driven by his brother-in-law, Herriman, stalled in the westbound lane of state primary highway No. 2H, which extends eastward from Spokane to the Washington-Idaho state line. Herriman coasted to a stop on the pavement, making no attempt to drive onto the graveled north shoulder of the road (which was about four feet in width). The parking lights were set, but the left rear taillight was not functioning.

Herriman stood in front of the stalled automobile and, as other cars approached from the east, he would step out and extend his arm, signaling his solicitation of assistance. As approaching cars would pass, he would step back to his sheltered position in front of respondent's automobile.

Respondent testified that he remained in his car for several minutes after it stopped and then got out of the right front door of the car. His left ankle had been fractured in an industrial accident several weeks before and was mending within a plaster of Paris walking cast, which extended nearly to his knee. He testified that, after stepping out of

his car, he employed one crutch for support purposes. He walked on the north shoulder of the highway to the rear of his car and then around to its left side near the cap on the gasoline tank. (En route, he stopped to jiggle the left rear taillight (which was not in operation) before stepping around the left rear corner of the car to check the gasoline tank. He decided against vibrating the car to ascertain the quantity in the tank fearing that he might put too much weight on his fractured ankle.) He then turned his back on approaching traffic and started to walk along the left side of the car toward the front with the intention of joining his brother-in-law. He testified that he did not see but rather sensed the approach of a car, and backed against the left rear fender of his automobile until he was hit.

Appellant's testimony revealed that while he was driving his car as it was approaching respondent's car from the rear, he first saw respondent's automobile at a distance of about 200 yards, at which time he thought it was in motion; that at a distance somewhat in excess of 75 to 100 yards he noticed that it was stopped; and that, when approximately 25 to 30 yards away, he swerved out into the left (south) lane to pass it.

At the time his car started to pass, he noticed "somebody dressed in light colored clothes, standing about the rear door of the Hudson." He testified that the man he saw "had his arm extended in about a half way out position, with his thumb out there and it looked like his thumb was out in a hitchhiking manner." At the trial, appellant identified the man he saw as Herriman, denying emphatically that he saw respondent at all before the accident. He stated that he had not seen a crutch or crutches, but respondent testified that the one crutch he was using was under his right arm, away from appellant's approaching automobile. Herriman testified that he had been in front of the stalled automobile as appellant's car approached, and had not been near the rear door at all; that respondent was standing about "a foot or a foot and a half" away from the left rear fender of his own

car. Respondent testified that at the time of the accident he was wearing tan trousers and a light-colored silk shirt.

Appellant testified that the cars were "adjacent to each other when I first felt the thud against my automobile and thought at that time I had probably hit someone, or something." Respondent's injured body came to rest near the center of the highway, a short distance in front, and to the left, of his stationary car.

An examination of appellant's Studebaker sedan by a state patrolman indicated that it had made initial contact with respondent on or near an air vent hinged at the back and protruding out from the side of the car. This vent was located behind the right front wheel well and immediately in front of the right front door. That door was scratched and depressed, and the right end of the rear bumper was damaged, with particles of plaster of Paris hanging from it. Respondent's Hudson had a dent in its left rear fender which, respondent testified, had not been on the car before the collision.

Photographs of the scene (taken shortly after respondent had been removed to the hospital) show a white substance on the highway near the left rear wheel of respondent's automobile. The state patrolman (who had been following appellant's vehicle for several miles, but did not see the impact) investigated the accident. He could not identify the substance, but stated, "It could be plaster of Paris."

The highway approaching the scene of the accident from the east was straight for several miles, with slight dips which would not obstruct a traveler's view. Measurements taken by the patrolman revealed that the paved roadbed was twenty feet in width; that the distance from the center hub of the left rear wheel of respondent's car to the center line of the highway was four feet eight inches; and that the distance from the north edge of the center line to the south edge of the eastbound lane of travel was nine feet ten inches. Appellant testified that the south shoulder of the road was about six to seven feet wide.

Appellant did not sound his horn before passing, nor did he blink his headlights. He testified that he was "probably just over the yellow line" as he passed. The patrolman was unable to state whether all four wheels of appellant's automobile crossed the center line into the eastbound lane as he passed.

The evidence was conflicting upon the crucial issue of respondent's precise position at the moment of the initial impact.

Appellant assigns as error the giving of certain instructions by the trial court in its charge to the jury.

■ Appellant's argument in his brief in this court, in support of his exception to instruction No. 3 (assignment of error No. 4), is based upon an additional ground which was not presented to the trial court. A different basis for challenging an instruction from that urged in the trial court cannot be submitted for the first time on appeal to this court. *Peerless Food Products Co. v. Barrows,* 49 Wn. (2d) 879, 307 P. (2d) 882 (1957), and cases cited. If, upon the ground asserted in the trial court, the instruction was error, then it certainly was not prejudicial.

Assignment of error No. 5 is directed to instruction No. 4, by which the jury was told:

" 'No person driving a vehicle upon a public highway outside of cities and towns and overtaking another vehicle *proceeding* in the same direction shall overtake such vehicle or drive within a distance of less than fifty feet of such overtaken vehicle for such purpose without first signaling his intention to pass by use of horn or other sounding device.' " (Italics ours.)

Appellant asserts that this instruction, given in the language of RCW 46.60.040 [*cf.* Laws of 1937, chapter 189, § 77, p. 892], constitutes reversible error, because there is no evidence that the respondent was *"proceeding* rather than parked" and "the jury was entitled to find negligence of appellant on issues entirely unsupported by evidence." If the trial court had not, in instruction No. 7, distinctly limited the vital issues to the two phases of the last clear chance doctrine, this contention might be upheld.

■ The presumption of prejudice which arises out of the giving of an erroneous instruction (*Franks v. Department of Labor & Industries,* 35 Wn. (2d) 763, 773, 215 P. (2d) 416 (1950), citing *Nordeen Iron Works v. Rucker,* 83 Wash. 126, 129, 145 Pac. 219 (1915)), may be overcome if the record, including all other instructions, when taken as a whole reveals that the jury could not have been misled or confused by it. See *Brammer v. Lappenbusch,* 176 Wash. 625, 634, 30 P. (2d) 947 (1934); *Stokes v. Magnolia Milling Co.,* 165 Wash. 311, 314, 5 P. (2d) 339 (1931); and *Herndon v. Seattle,* 11 Wn. (2d) 88, 99, 118 P. (2d) 421 (1941).

■ In this case, the instruction correctly stated the principle of law, and could be erroneous only if it had no applicability to the issues made by the pleadings or to the proof, and thus tended to confuse the jury. Neither appellant nor respondent was mentioned in it; nor was the jury advised that a violation of the statute constituted negligence *per se,* or that such negligence, if any, in order to form the basis of appellant's liability, was required to be a proximate cause of the resultant collision. We are unable to see how the jury could have been either confused or misled by the instruction. But if it could be reasonably said that they were, any such confusion was certainly removed by giving instruction No. 7 (hereinafter discussed), which appears to sufficiently protect appellant from the presumptive prejudice attached to the erroneous instruction.

We are unable to agree with appellant that the case of *Leavitt v. De Young,* 43 Wn. (2d) 701, 707, 263 P. (2d) 592 (1953), is determinative of his contention that the claimed error in instruction No. 4 was prejudicial, and therefore reversible error. In that case, the contributory negligence of the plaintiff was a vital issue, which was submitted to the jury under an erroneous abstract instruction. In the present case, the jury was instructed that the plaintiff could not recover damages based upon the primary negligence of defendant, and that its determination of the case would "turn exclusively upon the question of last clear chance." In *Neeley v. Bock,* 184 Wash. 135, 143, 50 P. (2d) 524 (1935),

this court quoted with approval from *Burge v. Anderson*, 164 Wash. 509, 3 P. (2d) 131 (1931), which, after stating the rule later approved in the *Leavitt* case, *supra*, said:

" 'This case is to be distinguished from such cases as *Gabrielsen v. Seattle*, 150 Wash. 157, 272 Pac. 723, 63 A. L. R. 200, and *Tenneson v. Kadiak Fisheries Co.*, *ante* p. 380, 2 P. (2d) 745, involving the giving of abstract instructions, correct in principle, where no issue upon the subject was presented.' "

The cases cited in the above quotation are discussed in *Stokes v. Magnolia Milling Co., supra.*

Appellant, by his sixth assignment of error, contends that the trial court erred in giving instruction No. 5, by which the jury was advised:

" 'Every motor vehicle shall be equipped with a suitable horn, which shall be sounded at any time when such vehicle is approaching a condition of danger or where in the exercise of due care warning should be made.' "

■ This instruction embodies the language of RCW 46-.36.040 [*cf.* Laws of 1937, chapter 189, § 35, p. 863]. It is urged that, since there was neither allegation nor proof that appellant's automobile was not "equipped with a suitable horn," the giving of this instruction constituted error. While, as appellant contends, there is no evidence that his automobile was not equipped with a suitable horn, appellant testified that he did not sound his horn. It was for the jury to determine whether or not respondent's position just prior to the collision was, in fact, a "condition of danger" which required appellant, in the exercise of due care, to give warning by sounding his horn as his vehicle approached respondent. Instruction No. 5 must be considered in the light of instruction No. 7, relating to the doctrine of last clear chance. In determining whether appellant had the last clear chance to avoid the accident, it was proper for the jury to consider whether appellant's failure to sound his horn was one element in his alleged failure to do what he could reasonably have done to avoid the ensuing collision. No error was committed in giving instruction No. 5.

■ Assignment of error No. 10 relates to instruction No. 9, which embodies the provisions of RCW 46.48.010 [*cf.* Laws of 1949, chapter 196, § 6, p. 579], and RCW 46.48.025 (Laws of 1951, chapter 28, § 11, p. 58). This instruction, which concerns speed, need not be set out at length. The statutes provide that a driver shall operate his vehicle in a careful and prudent manner and at a speed not greater than is reasonable and proper under the conditions existing at the point of operation. It further specifically states that the maximum speed allowed is not necessarily a safe speed under all circumstances. The language of the statute is a sufficient answer to appellant's contention that

"There is no evidence that appellant's car was being operated at a speed that could be considered excessive or unreasonable under the favorable conditions existing."

From appellant's own testimony, the jury (in considering the application of the last clear chance doctrine) could have found that appellant's speed of forty to forty-five miles per hour while passing within a distance of not to exceed four and one half feet of respondent's stalled automobile, after he had observed some person (whether it was respondent or Herriman) standing near the rear door of the car, constituted a failure to do all that he reasonably could to avoid the collision.

■ Assignments of error Nos. 7, 8, and 9 are directed to instructions Nos. 6, 7, and 8, by which the trial court instructed the jury on the application of the doctrine of last clear chance. As it is recognized and accepted in this state, that doctrine is set out in *Leftridge v. Seattle*, 130 Wash. 541, 228 Pac. 302 (1924), wherein we said:

"Going no farther back into the decisions than to *Mosso v. Stanton Co.*, 75 Wash. 220, 134 Pac. 941, L. R. A. 1916A 943, we find that case endeavored to clarify the last clear chance rule and define two separate conditions under which it was applicable, and the rule is announced as (1) that where the defendant *actually* saw the peril of a traveler on the highway and should have appreciated the danger and failed to exercise reasonable care to avoid injury, such failure made the defendant liable, although the plaintiff's negligence may

have continued up to the instant of the injury; but (2) that where the defendant did not actually see the peril of the plaintiff, but by keeping a reasonably careful lookout commensurate with the dangerous character of the agency and the locality *should have seen* the peril and appreciated it in time, by the exercise of reasonable care, to have avoided the injury, and failure to escape the injury results from failure to keep that lookout and exercise that care, the defendant was liable only when the plaintiff's negligence had terminated or culminated in a situation of peril from which the plaintiff could not, by the exercise of reasonable care, extricate himself."

The second—or "should have seen"—phase of the rule has two possible applications: (a) where the plaintiff's negligence has terminated; or (b) where the plaintiff's negligence has culminated (*i.e.*, reached its highest point or reached a climax) in a situation of peril from which plaintiff could not, by the exercise of reasonable care, extricate himself. Under the second phase, the plaintiff's negligence need not have terminated, but may have continued until the moment of injury, provided he was in a position of peril from which he could not, by the exercise of reasonable care, have extricated himself.

In *Everest v. Riecken*, 30 Wn. (2d) 683, 193 P. (2d) 353 (1948), this court expressly recognized the two distinct subdivisions, or branches, of the second phase of the rule, but concluded that the trial court did not err in refusing to give requested instructions on either, or both, because

"The negligence of the appellant had not terminated; and, if it had culminated in a position of peril from which the appellant could not extricate himself, it does not appear that the respondent saw or, in the exercise of due care, should have seen the appellant in a position of inextricable peril in time to have, by the exercise of reasonable care, avoided injuring him."

We have consistently held that the doctrine of *last clear chance* means just that. It will not be applied in either of its phases where the party sought to be charged has merely a last "possible" chance to avoid injury. See *Sarchett v. Fidler*, 37 Wn. (2d) 363, 223 P. (2d) 843 (1950);

*Stokes v. Johnstone*, 47 Wn. (2d) 323, 287 P. (2d) 472 (1955); *Klouse v. Northern Pac. R. Co.*, 50 Wn. (2d) 432, 312 P. (2d) 647 (1957), and cases cited therein.

We have likewise held that, where the negligence of the plaintiff continues until the moment of impact and he is *not* in a position of peril from which he could not, by the exercise of reasonable care, extricate himself, the second phase of the doctrine is not applicable. In such case, the chances of the respective parties to avoid the impending injury would be equal because the defendant would have no greater chance to avoid the accident than would the plaintiff. See *Thompson v. Porter*, 21 Wn. (2d) 449, 151 P. (2d) 433 (1944).

In the present case, appellant relies strongly upon the *Thompson* case, *supra*, in support of his contention that the last clear chance rule (in either of its phases) is inapplicable to the factual situation before us. In that case, the plaintiff was guilty of contributory negligence in walking "on the right-hand side of the roadway in disobedience of" a statute. Plaintiff's contributory negligence continued until the moment of injury. We said:

"Certainly, in this case Thompson's negligence had not terminated, and it would seem equally certain that it had not culminated in a situation of peril from which he could not extricate himself. He could have stepped off the pavement at any instant. In fact, we have heretofore squarely so decided."

In that case, we went on to discuss and expressly reject the plaintiff's contention that "one who is oblivious to his danger is, in effect, as unable to extricate himself as one who is physically unable to do so." A reading of that case discloses that the plaintiff, whose negligence continued until the moment of impact, had an opportunity equal to that of the defendant to avoid the accident. In that respect, we fail to find in the *Thompson* case, *supra*, a factual similarity which would be controlling in the case at bar, because here respondent was separated from the shoulder of the highway by his stalled car and, also, he was physically handicapped.

These factors were for the jury to consider in applying the doctrine.

In *Chapin v. Stickel,* 173 Wash. 174, 22 P. (2d) 290 (1933), this court affirmed a judgment based upon the verdict of a jury in favor of the plaintiff. In that case, the plaintiff, at the moment of impact, was standing on a highway between his stalled truck and a tow truck, and consequently could not be seen by drivers of approaching vehicles. The tail and headlights of plaintiff's truck were burning (the accident occurred about nine o'clock p. m.). Without an interfering obstruction, the defendant could see an object at least one hundred fifty feet ahead of him on the road as he approached the rear of plaintiff's truck. Defendant testified that he was twenty or thirty feet distant from plaintiff's truck when he first noticed it. He was unable to stop his vehicle in time to avoid colliding with the rear end of plaintiff's truck, forcing it forward against the plaintiff.

The trial court in the *Chapin* case, *supra,* as in the present case, instructed the jury on both the first phase and the second branch of the second phase of the last clear chance rule. But we there said:

"Clearly, the respondent [plaintiff] was not guilty of negligence which continued up to the time of the accident. Therefore, appellants [defendants] have no just cause for objection to the second phase of the instruction."

Here, appellant testified that he actually saw *someone* standing near the left rear door of respondent's vehicle. Hence, with reference to the first phase of the doctrine of last clear chance, the jury may have found from the evidence that the man appellant saw standing beside the rear door of the stalled automobile was, in fact, respondent. In that event, it would be immaterial whether or not respondent's negligence had continued until the moment of impact.

The trial court, in the present case, gave no instruction whatever concerning the first branch of the second phase of the doctrine, *i.e.,* relating to the termination of plaintiff's (respondent's) negligence. But under the court's in-

struction which covered the second branch of the second phase of the rule, the jury may have found from the evidence that respondent was, in fact, in a position of peril from which, in the exercise of reasonable care, he could not extricate himself. It would then be immaterial whether or not respondent's negligence continued until the moment of impact, if the jury found from the evidence that, in the exercise of reasonable care, appellant should have seen respondent's position of peril in time to have avoided the ensuing collision.

In this connection, since the point of initial impact was a matter of dispute, it was for the jury to determine, from the conflicting testimony and the physical evidence (such as the white substance on the pavement near the left rear wheel of respondent's car and the angle of appellant's car in relation to respondent's vehicle at the moment of the collision), respondent's precise position on the highway when he was hit, and to decide the ultimate issue of whether appellant had the last clear chance to avoid the accident.

By instruction No. 7, the jury was told:

*"You are instructed that the court has held as a matter of law that the plaintiff Patterson was guilty of negligence under the evidence in this case, and that there can be no recovery of damages based upon the primary negligence of the defendant.* You are therefore instructed that *there can be no recovery by the plaintiff in this case based upon the allegations of primary negligence and you can consider the allegations of primary negligence only insofar as they may relate to the application of the last clear chance doctrine,* as you will be hereinafter instructed on the legal principles of the last clear chance doctrine. *You are therefore instructed that your determination of this case will turn exclusively upon the question of 'last clear chance.'* " (Italics ours.)

It seems abundantly clear to us that, if instruction No. 5 (discussed above and held to be erroneous), when considered alone, could be said to have confused or misled the

jury, that effect was entirely cured by instruction No. 7, italicized above. Considering the instructions as a whole, the giving of instruction No. 5 could not be prejudicial error.

Appellant next contends that, assuming that the doctrine of last clear chance was applicable to the facts of this case, nevertheless the sentence from instruction No. 8 (quoted below) caused the whole of that instruction to be prejudicially erroneous. That sentence, referring to the doctrine of last clear chance, reads, in part:

"It is a rule of law which covers a plaintiff who has negligently placed himself in a situation of imminent peril *and is either unconscious of the situation or unable to avoid the danger, or both.*" (Italics ours.)

While, as appellant contends, this court has expressly rejected the application of the rule of last clear chance to cases wherein the plaintiff is injured as a result of his own obliviousness to danger and continued negligent inattentiveness to his surroundings (see *Thompson v. Porter, supra*), we cannot agree with the contention that the language employed by the trial court was prejudicially erroneous. Although we cannot approve the language used by the trial court in the italicized portion of the instruction (above quoted), we think that the instruction, as a whole, is a fair statement of the law, and that it should not be held to be prejudicially erroneous because of a detached statement which is technically wrong. See *Herndon v. Seattle, supra*, and cases cited therein, and *Myers v. West Coast Fast Freight*, 42 Wn. (2d) 524, 256 P. (2d) 840 (1953).

We conclude that, for the reasons hereinabove set out, the trial court did not err in submitting this case to the jury under the doctrine of the last clear chance, and that the several instructions assigned as error were not prejudicially erroneous. There was ample evidence, if believed by the jury, to warrant its verdict in favor of respondent. We find nothing in the record which would justify interference by that court, or by this court, with the verdict. Therefore,

appellant's remaining assignments of error are without merit.

The judgment is affirmed.

ROSELLINI and MALLERY, JJ., concur.

HILL, C. J., concurs in the result.

---

January 3, 1958. Petition for rehearing denied.