Axel BENSON, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. No. A-71-62.

United States District Court
D. Alaska,
at Anchorage.
Sept. 15, 1964.

Peter LaBate, Anchorage, Alaska, for plaintiff.

Joseph J. Cella, U. S. Atty., by Thomas E. Curran, Jr., Asst. U. S. Atty., Anchorage, Alaska, for defendant.

·PLUMMER, District Judge.

Plaintiff brought this action under the Federal Tort Claims Act, 28 U.S.C.A. §§ 2671–2680, to recover for personal injuries sustained by him on September 29, 1961, in the yards of the Alaska Railroad at Sutton, Alaska. This court has jurisdiction under Title 28 U.S.C.A. § 1346(b).

The pre-trial order directed, in accordance with the practice of the court, that the issue of liability be tried first and if liability was found, the issue of damages would then be tried.

, At the close of plaintiff's evidence, defendant moved for dismissal under Rule 41(b), Federal Rules of Civil Procedure. The court at that time declined to render any judgment until the close of all the evidence. Defendant at the close of the evidence renewed his motion for dismissal and it is this motion that is presently before the court for decision.

On September 29, 1961, a train of the Alaska Railroad, an agency of the United States of America, arrived at the railroad yards located at Sutton, Alaska, at 12:20 p. m. From then until 12:50 p. m. the train was engaged in train movements within the boundaries of the Sutton yards. This area is shown by defendant's Exhibit 1.

Plaintiff was at or near the railroad yards for about a half hour prior to the accident. He saw the train in the area but turned his back away from the train to look in the opposite direction for friends of his who were to meet him.

About 15 or 20 minutes thereafter the accident occurred. Plaintiff was not seen by any employee of the Alaska Railroad until after the accident.

Although plaintiff had one or two drinks before breakfast on that morning he was not intoxicated. He was sober and knew what he was doing. Just before the accident he was standing in an upright position between two empty hopper cars which were standing on the main track. The cars moved and plaintiff fell on the railroad ties at the north side of the main track just outside the rails. The point where plaintiff was found after the train stopped is designated on defendant's Exhibit 1 by "X–2" drawn in red. The accident occurred within the boundaries of the yard of the Alaska Railroad at Sutton.

At the time the engine coupled onto the string of empty cars standing on the main track the engineer rang the engine bell. John Shagenoff, one of the persons whom plaintiff was to meet, testified that just before the accident he was standing about a half a car length (approximately 20 feet) to the east of plaintiff, that he heard the bell or whistle on the engine— that he could hear the train. During the course of the train movements which occurred in the one-half hour preceding the accident the train at one time passed within 150 to 200 feet of the point where plaintiff was injured and at another time shortly prior to the accident it passed within 10 to 15 feet of the point.

■ John Shagenoff, an acquaintance of plaintiff's, had a house or house-trailer located about a half to three-quarters of a mile to the west of the railroad tool shed. About a half a mile beyond his house to the west was a creek. Although there was a road of sorts running to Shagenoff's place, Shagenoff and plaintiff testified that they and others, namely, hunters, fishermen and children, walked on or along the railroad tracks on many occasions over a period of years to get to Shagenoff's place and to the creek. There was no direct evidence that the railroad or any of its employees had knowledge of this and the court is unable to conclude from the evidence that there was use of such a nature, particularly within the boundaries of the railroad yard in the area where the plaintiff was injured, that the railroad is chargeable with such knowledge.

Plaintiff at the time of the accident was in the railroad yards and was waiting to meet John Shagenoff and his lady friend to go to Shagenoff's homestead. It is not clear as to the precise location of Shagenoff's homestead but it appears from Shagenoff's testimony that it was located to the east of the railroad yards.

■ Construing the evidence most favorably to the plaintiff the court must conclude that plaintiff was not, at the time he was injured, walking on or along the tracks to go fishing, hunting or to get to Shagenoff's place. To the contrary, the evidence establishes that at the time of the accident he was loitering or waiting for his friends and that he was standing between empty cars on the main track within the boundaries of the Sutton railroad yards with knowledge that the train was in the area.

■ Plaintiff, under the circumstances that existed at the time of the accident, was a trespasser to whom the railroad owed no duty except after discovering his peril.

However, plaintiff contends that the defendant's duty in this case is not established by statute or common law but is governed by the Manual of Safety Rules and Precautionary Measures for the General Guidance and Protection of Employees and the Public promulgated by the Alaska Railroad and in effect on the date of the accident. (Plaintiff's Exhibit A.)

Defendant contends that these are the private rules of the company and that its negligence must be determined by the standard fixed by law without regard to any private rules of the party.

■ The rules were admitted in evidence by the court as a circumstance to be considered on the issue of defendant's negligence. Byran v. Southern Pacific Co., 79 Ariz. 253, 286 P.2d 761, 50 A.L.

498

R.2d 1. See annotation appearing in 50 A.L.R.2d pp. 16–72 and 44 Am.Jur., Railroads, § 626, p. 884.

Rules 70 and 76 of the railroad's safety rules provide as follows:

"70. Before switching onto or switching outfit cars, cars containing emigrant movables or cars on house, team, icing, coal dock or industry tracks, trainmen or yardmen must first ascertain that there are no persons in, on, under or between such cars who might be injured in case they are moved, and any such person in or around them must be notified before such movement and every precaution taken to prevent injury."

"76. Before moving an engine always ring bell and make sure no one is around who might be injured by such movement."

■ The court finds that these rules do not apply to the facts of this case since the train movements being accomplished at the time of plaintiff's injury were being carried out within railroad yards belonging to the defendant at Sutton, Alaska. Cf. Southern Ry. Co. v. Pugh, 95 Tenn. 419, 32 S.W. 311; Nashville, C. & St. L. Ry. v. Lovejoy, 138 Tenn. 492, 198 S.W. 61; Tennessee Cent. Ry. Co. v. Dial, 16 Tenn.App. 646, 65 S.W.2d 610.

Additionally, a careful reading and examination of Rule 70 reveals that it is inapplicable to the facts of the present case. This rule applies only with reference to the switching onto or switching outfit cars, cars containing emigrant movables or cars on house, team, icing, coal dock or industry tracks. There is no evidence that any activities of this nature were being carried on in the railroad yards at Sutton on the day of the accident.

■ With reference to Rule 76 the engineer of the train testified that he rang the bell on the engine before coupling onto the empty hopper cars. The evidence does not establish that plaintiff was injured by the movement of the engine as such. The court concludes that the employees of the Alaska Railroad were under no duty to look under or around the empty stationary hopper cars located on the main track in the Sutton yards on September 29, 1961, to ascertain whether anyone was standing between the cars, before moving them.

■ Plaintiff contends that he is entitled to recover under the last clear chance doctrine. Before this doctrine is applicable it must appear (1) that plaintiff has been negligent, (2) that as a result of his negligence he is in a position of peril from which he cannot escape by the exercise of ordinary care, (3) that the defendant knows or should have known of plaintiff's peril, and (4) that defendant then had a clear chance, by the exercise of ordinary care, to avoid the injury, and that it failed to do so.

In the case of Thompson v. Porter, 21 Wash.2d 449, 151 P.2d 433, the Supreme Court of the State of Washington in discussing the history of the last clear chance doctrine in that state referred to the court's earlier decisions in Mosso v. E. H. Stanton Co., 75 Wash. 220, 134 P. 941, L.R.A.1916A, 943, and Leftridge v. City of Seattle, 130 Wash. 541, 228 P. 302. In quoting from the Leftridge case the court stated:

"Going no further back into the decisions than to Mosso v. [E. H.] Stanton Co., 75 Wash. 220, 134 Pac. 941, L.R.A.1916A, 943, we find that case endeavored to clarify the last clear chance rule and define two separate conditions under which it was applicable, and the rule is announced as (1) that, where the defendant actually saw the peril of a traveler on the highway, and should have appreciated the danger and failed to exercise reasonable care to avoid injury, such failure made the defendant liable, although the plaintiff's negligence may have continued up to the instant of the injury, but (2) that, where the defendant did not actually see the peril of the plaintiff, but by keeping a reasonably careful lookout commensurate

with the dangerous character of the agency and the locality should have seen the peril and appreciated it in time, by the exercise of reasonable care, to have avoided the injury, and failure to escape the injury results from failure to keep that lookout and exercise that care, the defendant was liable only when the plaintiff's negligence had terminated or culminated in a situation of peril from which the plaintiff could not, by the exercise of reasonable care, extricate himself.

"Thus we have two different situations to which the last clear chance rule applies. In the one the plaintiff's negligence may continue up to the time of the injury, if the defendant actually sees the peril; in the second the plaintiff's negligence must have terminated, if the defendant did not actually see the peril, but by the exercise of reasonable care should have seen it.

"This rule, as we have said, has been somewhat confused by later decisions which have failed to recognize the distinction between situations where the defendant actually saw, and situations where, by the exercise of reasonable care, the defendant should have seen, the position of the plaintiff."

At page 437 of the opinion in 151 P.2d the court stated as follows:

"Appellant further contends that the case should have been sent to the jury under the second division of the rule. Under that division, the defendant may be held liable under the doctrine of last clear chance, notwithstanding the negligence of the injured person and even if he did not see him, but should have seen his peril and appreciated it in time to have, by reasonable care, avoided the injury. But, under those circumstances, the defendant can only be held liable:

" ' * * * when the plaintiff's negligence had terminated or culminated in a situation of peril from which the plaintiff could not, by the exercise of reasonable care, extricate himself.'

"In summing up the two situations to which the last clear chance rule applies, the court said, in the Leftridge case, and this is the paragraph of the opinion so frequently quoted in our own opinions:

" 'Thus we have two different situations to which the last clear chance rule applies. In the one the plaintiff's negligence may continue up to the time of the injury, if the defendant actually sees the peril; in the second the plaintiff's negligence must have terminated, if the defendant did not actually see the peril, but by the exercise of reasonable care should have seen it.' "

The great weight of judicial authority denies the application of the last clear chance doctrine in the situation where the defendant, while under a duty to discover the danger to the injured person, did not actually discover it and the injured person was physically able to escape from the peril at any time up to the moment of impact. 38 Am.Jur., Negligence, § 224, p. 909; Prosser on Torts, 2nd Ed., § 52, p. 294; Restatement of Torts, § 480, p. 1257; Hirsh v. Manley, 81 Ariz. 94, 300 P.2d 588; Ziegelasch v. Durr, 183 Kan. 233, 326 P.2d 295; Fox v. Taylor, 10 Utah 2d 174, 350 P.2d 154; Gustafson v. Northern Pac. Ry. Co., 137 Mont. 154, 351 P.2d 212; Bryan v. Phillips, 70 N.M. 1, 369 P.2d 37; Nichols v. Spokane Sand & Gravel Co., 64 Wash.2d ——, 391 P.2d 183 (1964).

Certainly, in the present case plaintiff's negligence had not terminated, and it would seem equally certain that it had not culminated in a situation of peril from which he could not extricate himself. He could have stepped from between the railroad cars at any instant and prevented the accident. The facts of this case do not justify the application of the last clear chance doctrine.

The court concludes the defendant was not negligent and that the plaintiff's injuries were caused solely and proximately by the plaintiff's negligence. His negligence includes, but is not limited to, (1) loitering in the railroad yards at Sutton with knowledge that train movements were being carried on, (2) standing between empty cars on the main track in the railroad yards at Sutton with knowledge that train movements were being accomplished in the area, and (3) failure to keep a lookout although he knew a train was in the area.

Defendant's motion for dismissal under Rule 41(b) is granted. Pursuant to Rule 14 of the rules of this court, counsel for defendant is directed to prepare and submit appropriate findings of fact and conclusions of law and a proposed form of judgment within fifteen (15) days from the date of this opinion. The Clerk will not enter judgment until the form thereof has been approved by the court.